Michael J. Grygiel (*phv forthcoming*)
Kelly L. McNamee (*phv forthcoming*)
**GREENBERG TRAURIG, LLP**
54 State Street, Sixth Floor
Albany, New York 12207
Tel.: (518) 689-1400
Fax: (518) 689-1499
grygielm@gtlaw.com
mcnameek@gtlaw.com
C. Michael Judd (14692)

**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Tel.: (801) 532-1234
Fax: (801) 536-6111
mjudd@parsonsbehle.com

*Attorneys for Defendants Gannett Co., Inc. and Journal Sentinel Inc.*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SUNWEST BANK, a Utah corporation,<br><br>*Plaintiff,*<br><br>vs.<br><br>GANNETT CO., INC., a Delaware corporation, and JOURNAL SENTINEL INC., a Wisconsin corporation,<br><br>*Defendants.* | **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO UTAH'S UNIFORM PUBLIC EXPRESSION PROTECTION ACT AND/OR FED. R. CIV. P. 12(b)(6)**<br><br>Case No. 2:24-cv-876-DBB-JCB<br>Judge David B. Barlow<br>Magistrate Judge Jared C. Bennett |

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES ...........................................................................................ii

REQUESTED RELIEF.................................................................................................1

INTRODUCTION AND GROUNDS FOR REQUESTED RELIEF...........................................1

RELEVANT FACTS ....................................................................................................4

The Parties ..............................................................................................................4

The Article ..............................................................................................................4

The Complaint's Allegations and Causes of Action .......................................................5

ARGUMENT ............................................................................................................6

I.     UPEPA Applies in Federal Court. ...................................................................6

II.    UPEPA Applies to Sunwest's Claims. .............................................................7

III.   Sunwest's Complaint Fails to State a Claim for Defamation. .............................9

    A.    Several of the Statements at Issue Are Not Actionable Because They Do Not Concern Sunwest. ....................................................................9

    B.    One of the Statements at Issue Is a Nonactionable Statement of Opinion. ................10

    C.    The Complaint Fails To State A Claim For Defamation *Per Se*. ............................11

    D.    The Complaint Fails to State a Claim For Defamation Based On Any Unstated Implication Allegedly Conveyed. ...............................................................13

    E.    As a Public Figure, Sunwest Was Required—but Failed—Plausibly To Allege Actual Malice.........................................................................................17

IV.   Sunwest—as a Corporate Plaintiff—Cannot Bring Suit for Being Placed in a False Light...................................................................................................22

V.    Sunwest's "Cause of Action" for a Permanent Injunction Fails as a Matter of Law.........23

CONCLUSION........................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Albustani v. Alger*,
No. C22-5238JLR, 2022 WL 3213331 (W.D. Wash. Aug. 9, 2022) .......................................7

*Am. Malting Co. v. Keitel*,
217 F. 672 (S.D.N.Y. 1914) ........................................................................................................23

*Am. Univ. of Antigua Coll. of Med. v. Woodward*,
No. 10-10978, 2010 WL 5185075 (E.D. Mich. Dec. 16, 2010) ..............................................3

*Besen v. Parents & Friends of Ex-Gays, Inc.*,
No. 3:12-cv-204, 2012 WL 1440183 (E.D. Va. Apr. 25, 2012) ..............................................9

*Biro v. Condé Nast*,
883 F. Supp. 2d 441 (S.D.N.Y. 2012) .............................................................................6, 7, 20

*Boley v. Atl. Monthly Grp.*,
950 F. Supp. 2d 249 (D.D.C. 2013) ........................................................................................9

*Bose Corp. v. Consumers Union of U.S., Inc.*,
466 U.S. 485 (1984) ................................................................................................................21

*Buttar v. Hearst Commc'ns*,
No. 21-cv-5566, 2022 WL 1215307 (N.D. Cal. Apr. 25, 2022) ...........................................22

*Carr v. Forbes, Inc.*,
259 F.3d 273 (4th Cir. 2001) ..................................................................................................19

*Chang v. Michiana Telecasting Corp.*,
900 F.2d 1085 (7th Cir. 1990) ...............................................................................................22

*Chapin v. Knight-Ridder, Inc.*,
993 F.2d 1087 (4th Cir. 1993) ...............................................................................................14

*Church of Scientology Int'l v. Behar*,
238 F.3d 168 (2d Cir. 2001) .....................................................................................................9

*Conroy v. Kilzer*,
789 F. Supp. 1457 (D. Minn. 1992) ........................................................................................14

*Crosby v. Bradstreet Co.*,
312 F.2d 483 (2d Cir. 1963) ...................................................................................................23

*Diesel Power Source v. Crazy Carl's Turbos, Inc.*,
  2:14-cv-0-826-DN, 2017 WL 1131892 (D. Utah 2017) ..........................................13

*Dodds v. ABC*,
  145 F.3d 1053 (9th Cir. 1998) ................................................................17

*Earley v. GateHouse Media Pa. Holdings, Inc.*,
  3:12-cv-1886, 2013 WL 5466149 (M.D. Pa. Sept. 30, 2013)................................20

*Firehole River Capital v. Supurva Healthcare Grp.*,
  2:21-cv-153-DBB, 2021 WL 4291087 (D. Utah Sept. 21, 2021)...........................23

*Garrison v. Louisiana*,
  379 U.S. 64 (1964)................................................................................20

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974)...............................................................................18

*Gilman v. Spitzer*,
  902 F. Supp. 2d 389 (S.D.N.Y. 2012).........................................................9

*Gunder's Auto Ctr. v. State Farm Ins.*,
  617 F. Supp. 2d 1222 (M.D. Fla. 2009).......................................................23

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989)...............................................................................21

*Henry v. Fox News Network LLC*,
  629 F. Supp. 3d 136 (S.D.N.Y. 2022)........................................................17

*Hogan v. Winder*,
  No. 2:12-CV-123-TS, 2012 WL 4356326 (D. Utah Sept. 24, 2012).....................14

*Hourani v. Psybersolutions LLC*,
  164 F. Supp. 3d 128 (D.D.C. 2016) ...........................................................19

*John Bean Techs. Corp. v. B GSE Grp., LLC*,
  480 F. Supp. 3d 1274 (D. Utah 2020).......................................................9, 11

*Kaelin v. Globe Commc'ns Corp.*,
  162 F.3d 1036 (9th Cir. 1998) ................................................................15

*In re Khan*,
  No. 19-04258, 2022 WL 4073437 (Bankr. W.D. Mich. Sept. 2, 2022) ..................9

*Konigsberg v. Time, Inc.*,
    288 F. Supp. 989 (S.D.N.Y. 1968) ........................................................23

*Lohrenz v. Donnelly*,
    223 F. Supp. 2d 25 (D.D.C. 2002) .......................................................21

*Lohrenz v. Donnelly*,
    350 F.3d 1272 (D.C. Cir. 2003) ...........................................................20

*Mahmoodian v. Pirnia*,
    No. 3:11-cv-005, 2012 WL 4458160 (W.D. Va. June 7, 2012)............23

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991)..............................................................................20

*Mayfield v. NASCAR*,
    674 F.3d at 378 ....................................................................................21

*Miller v. Transamerican Press, Inc.*,
    621 F.2d 721 (5th Cir. 1980) ...............................................................19

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964)................................................................... *passim*

*Newton v. NBC*,
    930 F.2d 662 (9th Cir. 1990) ...............................................................17

*Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*,
    111 F.3d 1386 (8th Cir. 1997) ...............................................................9

*Parekh v. CBS Corp.*,
    820 F. App'x 827 (11th Cir. 2020) ........................................................8

*Parisi v. Sinclair*,
    845 F. Supp. 2d 215 (D.D.C. 2012) .....................................................22

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018)............7

*Project Veritas v. Leland Stanford Junior Univ.*,
    C21-1326 TSZ, 2022 WL 1555047 (W.D. Wash. May 17, 2022) ........6

*Ramsey v. Fox News Network*,
    351 F. Supp. 2d 1145 (D. Colo. 2005)................................................15

*Reliance Ins. Co. v. Barron's*,
442 F. Supp. 1341 (S.D.N.Y. 1977)............................................................9

*Rosenblatt v. Baer*,
383 U.S. 75 (1966)................................................................................9

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010)..............................................................................6

*Snyder v. Phelps*,
562 U.S. 443 (2011)............................................................................10

*Southard v. Forbes*,
588 F.2d 140 (5th Cir.) .......................................................................15

*St. Amant v. Thompson*,
390 U.S. 727 (1968).......................................................................20, 21

*Tilton v. Capital Cities/ABC Inc.*,
827 F. Supp. 674 (N.D. Okla. 1993) ....................................................23

*UHS of Provo Canyon, Inc. v. Bliss*,
No. 2:24-cv-163-DAK-CMR, 2024 WL 4279243 (D. Utah Sept. 24, 2024) .......................3, 6

*Vasquez v. Trinity Mission Health & Rehab of Provo, LLC*,
No. 2:11-cv-1002-EJF, 2013 WL 4095157 (D. Utah Aug. 13, 2013) ..................................22

*Villarreal v. City of Laredo*,
94 F.4th 374 (5th Cir. 2024) .................................................................8

*Waldbaum v. Fairchild Publ'ns, Inc.*,
627 F.2d 1287 (D.C. Cir. 1980) ............................................................18

*Zorzi v. Cnty. of Putnam*,
30 F.3d 885 (7th Cir. 1994) ..................................................................8

**State Cases**

*Animal Rights Found. of Fla., Inc. v. Siegel*,
867 So. 2d 451 (Fla. Dist. Ct. App. 2004) ............................................23

*Aston v. Chronicle-Progress, LLC*,
Case No. 230700053 (Utah 4th Dist. Sept. 25, 2024)...........................7, 8

*Baum v. Gillman*,
667 P.2d 41 (Utah 1983) ......................................................................11

*Brannon v. Am. Micro Distribs., Inc.*,
    342 S.E.2d 301 (Ga. 1986)..........................................................................23

*Cohen v. Advanced Med. Grp. of Ga., Inc.*,
    496 S.E.2d 710 (Ga. 1998)..........................................................................23

*Coronado Credit Union v. KOAT Television, Inc.*,
    656 P.2d 896 (N.M. Ct. App. 1982) ............................................................18

*Corpus Christi Caller-Times v. Mancias*,
    794 S.W.2d 852 (Tex. App. 1990)...............................................................24

*Davidson v. Baird*,
    2019 UT App 8, 438 P.3d 928 .....................................................................10

*DeHart v. Tofte*,
    533 P.3d 829 (Or. Ct. App. 2023)..................................................................7

*Flint v. Hutchinson Smoke Burner Co.*,
    19 S.W. 804 (Mo. 1892) ..............................................................................24

*Greenberg v. Burglass*,
    229 So. 2d 83 (La. 1969) .............................................................................24

*Guste v. Connick*,
    5115 So. 2d 436 (La. 1987) ..........................................................................23

*Hajek v. Bill Mowbray Motors, Inc.*,
    647 S.W.2d 253 (Tex. 1983).........................................................................24

*High Country Fashions, Inc. v. Marlenna Fashions, Inc.*,
    357 S.E.2d 576 (Ga. 1987)...........................................................................23

*Hill v. Petrotech Res. Corp.*,
    325 S.W.3d 302 (Ky. 2010) .........................................................................23

*Jadwin v. Minneapolis Star & Tribune Co.*,
    367 N.W.2d 476 (Minn. 1985)......................................................................19

*League for Peace with Justice in Palestine v. Newspaper P.M.*,
    65 N.Y.S.2d 480 (Sup. Ct. N.Y. Cnty. 1974) ..............................................24

*Lindsay & Co. v. Mont. Fed'n of Labor*,
    96 P. 127 (Mont. 1908)................................................................................24

*State ex rel. Liversey v. Judge of Civil Dist. Court*,
    34 La. Ann. 741 (1882) ...........................................................23

*Lowes v. Thompson*,
    546 P.3d 311 (Or. Ct. App. 2024) ............................................8

*Marx & Haas Jeans Clothing Co. v. Watson*,
    67 S.W. 391 (Mo. 1902) .........................................................24

*Mitchell v. Grand Lodge, Free & Accepted Masons of Tex.*,
    121 S.W. 178 (Tex. Civ. App. 1909) ......................................24

*Montgomery Ward & Co. v. United Retail, Wholesale & Dep't Store Emps.*,
    70 N.E.2d 75 (Ill. 1948) ........................................................23

*O'Leary v. Police Dep't of N.Y.*,
    409 N.Y.S.2d 676 (Sup. Ct. N.Y. Cnty. 1978) ......................24

*Pebble Brook, Inc. v. Smith*,
    356 A.2d 48 (N.J. Super. Ct. Ch. Div. 1976) ........................24

*Pirmantgen v. Feminelli*,
    745 S.W.2d 576 (Tex. App. 1988) ..........................................24

*Seegmiller v. KSL, Inc.*,
    626 P.2d 968 (Utah 1981) .......................................................12

*Spencer v. Glover*,
    2017 UT App 69, 397 P.3d 780 ..............................................11

*St. Margaret Mercy Healthcare Ctrs., Inc. v. Ho*,
    663 N.E.2d 1220 (Ind. Ct. App. 1996) ..................................23

*State v. Krueger*,
    1999 UT App 54, 975 P.2d 489 ................................................8

*Ex parte Tucker*,
    220 S.W. 75 (Tex. 1920) ........................................................24

*West v. Thomson Newspapers*,
    872 P.2d 999 (Utah 1994) ..................................................9, 10

*Wolf v. Harris*,
    184 S.W. 1139 (Mo. 1916) .....................................................24

**State Statutes**

Utah Code § 78B-25-101 ...................................................................................2, 5

Utah Code § 78B-25-102 .................................................................................3, 7, 8

Utah Code § 78B-25-103 ......................................................................................1

Utah Code § 78B-25-107 ...................................................................................6, 7

Utah Code § 78B-25-110 ...................................................................................3, 7

**Rules**

Federal Rule of Civil Procedure 7(b) .........................................................................1

Federal Rule of Civil Procedure 12(b)(6) ........................................................... *passim*

**Other Authorities**

Restatement (Second) of Torts § 652E .......................................................................22

Restatement (Second) of Torts § 652I .......................................................................22

Robert D. Sack, SACK ON DEFAMATION § 12.3 (5th ed. 2017) ..................................................22

## REQUESTED RELIEF

In accordance with Fed. R. Civ. P. 7(b), local rule DUCivP 7-1(a), and Utah Code section 78B-25-103, Defendants Gannett Co., Inc. and Journal Sentinel Inc. (collectively, "Press Defendants"), by and through counsel, respectfully submit this Motion to Dismiss Plaintiff's Complaint Pursuant to Utah's Uniform Public Express Protection Act ("UPEPA") and/or Fed. R. Civ. P. 12(b)(6). The claims asserted by Plaintiff Sunwest Bank ("Sunwest") are subject to dismissal under UPEPA, with fees awarded to Press Defendants pursuant to that statute. For the same reasons that Sunwest's claims are barred by UPEPA, Sunwest's Complaint also fails to state a cause of action against the Press Defendants and, accordingly, should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION AND GROUNDS FOR REQUESTED RELIEF

The First Amendment guarantees "the opportunity for free political discussion to the end that government may be responsive to the will of the people." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964). It is hard to imagine a more manifest exercise of that opportunity than the September 19, 2024, *Milwaukee Journal Sentinel* (the *Journal Sentinel*) article challenged in this case by Sunwest, a highly regulated financial institution with locations across multiple states. The article, titled "Democrats question Eric Hovde over his bank's $26M deal with a troubled Mexican bank" (the "Article"), reports on concerns regarding Eric Hovde, Sunwest's Chairman and Chief Executive Officer, and Sunwest's business relationship with Banco Azteca, a foreign bank accused of having links to a Mexican drug cartel. The concerns were raised, and the Article was published, in the midst of Hovde's political campaign for a United States Senate seat from Wisconsin against incumbent Democratic Senator Tammy Baldwin. The Article, which reports on legitimate matters

1

of public interest, lays out true facts, presents opinions and viewpoints from interested commenters, and raises questions for readers to consider.

Contrary to the Complaint's accusations, nowhere does the Article state or imply that Sunwest engaged in any illicit or criminal behavior. Indeed, just the opposite—the Article expressly points out that (i) although members of the Democratic Party of Wisconsin had concerns regarding Sunwest's business relationship with Banco Azteca, they were not suggesting that Hovde or Sunwest had done anything illegal; (ii) neither Hovde nor Sunwest have been accused of wrongdoing; and (iii) no evidence exists that any of the transactions between Sunwest and Banco Azteca were connected to illegal activity. Moreover, the Article presents a balanced report of the concerns at issue, with comment from individuals with varied viewpoints on the matters addressed, including a spokesperson from the entity that owns Banco Azteca, and, notably, Hovde himself.

Apparently perturbed by the uncomfortable questions this journalism begets, Sunwest seeks to retaliate against the *Journal Sentinel* and Press Defendants by asserting that the Article injured the bank's reputation and/or infringed on its purported privacy rights. This action, however, runs headlong into the Uniform Public Expression Protection Act ("UPEPA"), which Utah recently enacted to bar the very type of retaliatory claims asserted here. Specifically, UPEPA was designed to prevent abusive litigation, known as strategic lawsuits against public participation or "SLAPPs," aimed at silencing speech through meritless defamation, privacy, or other nuisance claims. Utah Code § 78B-25-101 *et seq.*; *see also* Uniform Law Commission, Uniform Law and Commentary, § 1 cmt. (noting that the purpose of a SLAPP action is to "ensnare [defendants] in costly litigation that chills society from engaging in constitutionally protected activity"). Anti-SLAPP statutes like

UPEPA are predicated on the idea that it is not enough simply to allow the defendant in a SLAPP action ultimately to prevail under the normal standards of a dispositive motion, because forcing a defendant to endure the burden and expense of litigation is, in itself, a victory for the SLAPP plaintiff and a defeat for the defendant. *Id.* (explaining that UPEPA is designed "to prevent . . . the impairment of First Amendment rights and the time and expense of defending against litigation that has no demonstrable merit"). The purpose and policy animating UPEPA is directly implicated here, given the Complaint's apparent attempt to cow Press Defendants—and perhaps others—into silence regarding matters of public concern, or risk having to devote their time and resources to defend their First Amendment rights.

For the reasons detailed herein, Press Defendants plainly satisfy the two-prong UPEPA analysis applicable in federal district court and, thus, qualify for protection, immediate dismissal, and an award of costs under the statute. *UHS of Provo Canyon, Inc. v. Bliss*, No. 2:24-cv-163-DAK-CMR, 2024 WL 4279243, at *10 (D. Utah Sept. 24, 2024). First, there can be no question that Sunwest's claims of defamation *per se* and false light—each of which is premised on a news article reporting in the midst of Hovde's political campaign on concerns regarding Hovde's and Sunwest's business relationship with a foreign bank accused of having links to a Mexican drug cartel—are based on Press Defendants' free speech on a matter of public concern. Utah Code § 78B-25-102(c). Second, the Complaint, which is brought on behalf of Sunwest but is unable to point to a single false statement of fact about the bank itself, fails to state a cause of action upon which relief can be granted. *See* Utah Code §§ 78B-25-102(2)(c) and 107(1). As detailed below, each of Sunwest's claims fails as a matter of law under a Rule 12(b)(6) analysis.

Press Defendants are entitled to dismissal of Sunwest's Complaint in its entirety and an award of fees, costs, and litigation expenses. *See* Utah Code § 78B-25-110(1).

## RELEVANT FACTS

### *The Parties*

Defendant Gannett Co., Inc. is a media holding company that indirectly owns a variety of media assets, including Defendant the Journal Sentinel Inc. Compl. ¶¶ 9–10 [ECF 1-1].

Defendant the Journal Sentinel Inc. publishes the *Journal Sentinel*, a daily community newspaper, available in both print and online, serving Milwaukee, Wisconsin, and the vicinity. *Id.* ¶¶ 5–7.

Plaintiff Sunwest Bank is a state-chartered, highly regulated, Utah-based banking institution, which provides business and personal banking services across at least five states. *Id.* ¶¶ 1–4, 27, 33–71. Sunwest Bank's Chairman and Chief Executive Officer is Eric Hovde, a Republican who ran for the Wisconsin U.S. Senate seat this past election cycle against incumbent Democratic Senator Tammy Baldwin. *Id.* ¶ 14; *see generally id.*, Ex. D.

### *The Article*

On September 19, 2024, the *Journal Sentinel* published an article titled "Democrats question Eric Hovde over his bank's $26M deal with a troubled Mexican bank." *Id.* The Article reports on concerns raised by members of the Wisconsin Democratic Party regarding Hovde's and Sunwest's business relationship with Banco Azteca — the tenth largest financial institution in Mexico. *Id.* As the Article reports, Banco Azteca had been accused of having links to a Mexican drug cartel, has been dropped as a financial partner by some U.S. banks because of risk and compliance concerns, and was recently "caught up" in a bribery scheme involving an American congressman. *Id.*

The Article provides an accurate report of the concerns raised and includes true facts underlying those concerns. *Id.* To provide a balanced report, Reporter Daniel Bice, who authored the Article, contacted a variety of sources for comment, including both Hovde and a representative of the entity that owns Banco Azteca. In fact, the Article devotes a significant portion of its reporting to comments and information from Hovde and the Banco Azteca representatives, expressly providing them a chance to "fight back" against the concerns raised by certain Wisconsin Democrats. *Id.*

Notably, the Article repeatedly disclaims that Sunwest, or Hovde for that matter, were involved in any wrongdoing, let alone illicit or criminal behavior, expressly stating, for example, that "[n]either Hovde nor Sunwest have been accused of wrongdoing nor is there evidence that the funds from Banco Azteca were connected to cartel activity." *Id.*, Ex. D, at 2.

As the Complaint acknowledges, the Article's reporting was made "in the context of a political campaign"—namely, Hovde's political campaign for a United States Senate seat. *Id.* ¶ 139.

### The Complaint's Allegations and Causes of Action

Sunwest's Complaint asserts causes of action for defamation *per se*, false light invasion of privacy, and permanent injunction, each of which purportedly arise out of ten statements included in, or allegedly implied by, the Article. *Id.* ¶¶ 113(a)–(j); 140–177.

Although Sunwest styled its defamation cause of action as one for defamation *per se*, the Complaint fails to identify any false statements of fact concerning Sunwest. Instead, Sunwest alleges that false implications arise from the isolated statements identified in the Complaint to the

effect that Sunwest engaged in wrongdoing and/or criminal behavior via its transactions with Banco Azteca. *See generally id.*

**ARGUMENT**

**I.     UPEPA Applies in Federal Court.**

Utah's UPEPA, which hews closely to the model law drafted by the Uniform Law Commission, is an anti-SLAPP statute designed to allow early dismissal of meritless claims that threaten First Amendment rights. Utah Code § 78B-25-101 *et seq.* Case law from this district and other federal district courts applying state anti-SLAPP statutes premised on the model rule make clear that UPEPA is applicable in federal court. *Provo Canyon*, 2024 WL 4279243, at *10 (applying  UPEPA); *see also Project Veritas v. Leland Stanford Junior Univ.*, C21-1326 TSZ, 2022 WL 1555047, at *4 (W.D. Wash. May 17, 2022) ("The Court concludes that UPEPA applies in federal court and will analyze Stanford's UPEPA motion, and the motion to dismiss filed by UW, under the standards of Rule 12(b)(6).").

The reason is because UPEPA, by its express terms, creates substantive rights and does not conflict with any federal rule. *Compare Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (explaining that the analysis generally turns on whether a state's anti-SLAPP law creates substantive rights and does not conflict with any federal rule), *with* Uniform Law Commission, Uniform Law and Commentary, § 2 cmt. 2 (explaining that  UPEPA is specifically formulated "to prevent substantive consequences: the impairment of First Amendment rights and the time and expense of defending against litigation that has no demonstrable merit"), *and Project Veritas*, 2022 WL 1555047, at *4 (explaining that the "UPEPA essentially mimics the language of Rule 12(b)(6) in stating that standards for courts to use when analyzing a special

motion for expedited relief to dismiss based on only the legal sufficiency of the complaint").
Accordingly, UPEPA is applicable here.

UPEPA requires a two-part analysis in federal court. First, the defendant must make a threshold showing that UPEPA applies to the action. Utah Code § 78B-25-107(1)(a). Second, the defendant bears the burden of demonstrating that the complaint "fail[s] to state a cause of action upon which relief can be granted." *Id.* § 78B-25-107(1)(c)(ii)(A); *Albustani v. Alger*, No. C22-5238JLR, 2022 WL 3213331, at *4 (W.D. Wash. Aug. 9, 2022) (construing UPEPA and applying the Federal Rule of Civil Procedure 12(b)(6) standard to consider whether a claim is properly stated).[1] If the court determines that  UPEPA applies and that the plaintiff has failed to state a viable cause of action, the court must dismiss the action and "award court costs, reasonable attorney fees, and reasonable litigation expenses related to the motion" to the defendant. *Id.* § 78B-25-110(1).

For the reasons set forth below, Press Defendants satisfy both prongs of UPEPA analysis.

## II.    UPEPA Applies to Sunwest's Claims.

As to UPEPA's threshold requirements, Sunwest's claims are unmistakably based on Press Defendants' "exercise of the right of freedom of speech or of the press . . . , guaranteed by the United State Constitution or Utah Constitution, on a matter of public concern." Utah Code § 78B-

---

[1] The alternative under UPEPA that the responding party establish a prima facie case as to each essential element, Utah Code § 78B-25-107(1)(c)(i), does not apply in federal court. *See Albustani*, 2022 WL 3213331, at *3. Likewise, the moving party cannot obtain dismissal in federal court by showing a lack of any genuine issue as to any material fact. *Id.*; *see also* Utah Code § 78B-25-107(1)(c)(ii)(B). However, "when an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834–35 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018).

25-102(2)(c). To satisfy this initial prong, Press Defendants need not "demonstrate that their conduct was *protected* under the First Amendment," *DeHart v. Tofte*, 533 P.3d 829, 843 (Or. Ct. App. 2023) (emphasis added) (internal quotation marks omitted), but only that the "conduct alleged in support of [Sunwest's claims] is of the sort protected by the anti-SLAPP statute," *Lowes v. Thompson*, 546 P.3d 311, 315 (Or. Ct. App. 2024).[2]

Here, there can be no question that reporting by the press, including the Article, is protected at the heart of First Amendment, particularly when such reporting is made "in the context of a political campaign." *Parekh v. CBS Corp.*, 820 F. App'x 827, 836 (11th Cir. 2020) (stating that "publishing a news report on a matter of public concern" constitutes "protected first Amendment activity"); *Villarreal v. City of Laredo*, 94 F.4th 374, 399 (5th Cir. 2024) (Graves, J. dissenting) ("The right to gather and report news could not be more firmly embedded in the Constitution. The text of the First Amendment itself forbids the government from 'abridging the freedom . . . of the press.' U.S. Const. amend. I."); *State v. Krueger*, 1999 UT App 54, ¶ 32, 975 P.2d 489 (stating that news reporting is "clearly [a] protected activit[y] under the First Amendment"); *see also* Ex. A, Ruling and Order, at 3–8, *Aston v. Chronicle-Progress, LLC*, Case No. 230700053 (Utah 4th Dist. Sept. 25, 2024) (observing that claims against a press defendant for an article that is a matter of public concern "fall squarely under Section 78B-25-102(2)(c)" of Utah's UPEPA).

It is likewise incontrovertible that reporting involving a highly regulated financial institution's business relationships, particularly when such reporting involves an executive of the bank who, at the time of the reporting, was actively engaged in a political campaign for federal

---

[2] This test applies the same way in Utah. *See* Ruling and Order, at 3–8, *Aston v. Chronicle-Progress, LLC*, Case No. 230700053 (Utah 4th Dist. Sept. 25, 2024). For the Court's convenience, a copy of that *Aston* Ruling and Order is attached as Exhibit A to this Motion.

public office, constitutes speech on a matter of public concern. *In re Khan*, No. 19-04258, 2022 WL 4073437, at *1 (Bankr. W.D. Mich. Sept. 2, 2022) (explaining that cases involving the actions of highly regulated financial institutions "approaches, if not reaches the zenith of public interest"); *see also Zorzi v. Cnty. of Putnam*, 30 F.3d 885, 896 (7th Cir. 1994) (noting "political speech is clearly a matter of public concern").

Additionally, as is clear from the Complaint, each of Sunwest's claims are premised on statements included in the Article. This action thus falls squarely within UPEPA's protections.

## III. Sunwest's Complaint Fails to State a Claim for Defamation.

### A. Several of the Statements at Issue Are Not Actionable Because They Do Not Concern Sunwest.

As to certain of the statements complained of, Sunwest's Complaint fails to allege facts sufficient to plead the very first element of a defamation claim under Utah law: that the defendants published the statements *concerning the plaintiff*. *John Bean Techs. Corp. v. B GSE Grp., LLC*, 480 F. Supp. 3d 1274, 1321–22 (D. Utah 2020) (identifying the following elements of a defamation claim under Utah law: (1) the defendant published the statements concerning the plaintiff, (2) the statements were false, defamatory, and not subject to any privilege, (3) the statements were published with the requisite degree of fault, and (4) publication of the statements resulted in damage) (citing *West v. Thomson Newspapers*, 872 P.2d 999, 1007–08 (Utah 1994)).

"Whether a challenged statement reasonably can be understood as of and concerning the plaintiff is a question of law for the Court, which 'should ordinarily be resolved at the pleading stage.'" *Gilman v. Spitzer*, 902 F. Supp. 2d 389, 394 (S.D.N.Y. 2012) (quoting *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001)). A purported defamatory statement does not "concern" the plaintiff unless the words of the statement are "specifically directed at the

plaintiff." *Rosenblatt v. Baer*, 383 U.S. 75, 81 (1966); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 288 (1964).

Here, four of the statements complained of are not "directed to" Sunwest but, rather, Banco Azteca. *See* Compl. ¶ 113(a) ("Banco Azteca . . . has had its share of problems in recent years. Accused in past news stories of having links to the Mexican drug cartel."); *id.* 113(b) ("Banco Azteca has been 'Dropped as a financial partner by some U.S. banks because of risk and compliance concerns.'"); *id.* ¶ 113(c) ("Banco Azteca is 'now caught up in a Texas bribery scheme with an American congressman.'"); *id.* ¶ 119(e) ("Banco Azteca, as part of its relationship with Sunwest, 'sent $26.2 million in cash to [Sunwest] on four airplane flights.'")). Accordingly, these four statements do not concern Sunwest, and Sunwest is therefore precluded from asserting a defamation claim based on these statements.

### B. One of the Statements at Issue Is a Nonactionable Statement of Opinion.

Another essential element of a defamation claim is that the statements at issue must be "false." *See West*, 872 P.2d at 1008). By definition, a statement can only be actionable as defamation if it is capable of being proven true or false. *Id.* It follows that a plaintiff is "definitionally unable" to satisfy this falsity element "with regard to statements of pure opinion, because such statements are incapable of being verified and therefore cannot serve as the basis for defamation liability." *Davidson v. Baird*, 2019 UT App 8, ¶ 31, 438 P.3d 928 (cleaned up). The reason that "opinions are inherently incapable of verification" is that "they embody ideas, not facts." *West*, 872 P.2d at 1014 (cleaned up). "Because expressions of pure opinion fuel the marketplace of ideas and because such expressions are incapable of being verified, they cannot serve as the basis for defamation liability," *id.* at 1015, and "the Utah Constitution provides an

independent source of protection for expressions of opinion," *id.* at 1013. The First Amendment to the United States Constitution likewise protects statements of opinion, of which protection is even more pronounced in matters of public concern. *See, e.g.*, *Snyder v. Phelps*, 562 U.S. 443, 452–53 (2011) (noting that for matters of public concern, courts should "accord broad protection to speech to ensure that courts themselves do not become inadvertent censors" (cleaned up)).

Under Utah law, the "common usage or meaning of the words" is employed to determine "whether the statement is capable of being objectively verified as true or false," or whether it constitutes a constitutionally protected statement of opinion. *West*, 872 P.2d at 1018. Applying that analysis here, the Article's quoted statement from Arik Wolk, a Wisconsin Democratic Party spokesperson, that "Sunwest's transactions with Banco Azteca are 'extraordinarily concerning,' especially given the alleged past ties between Azteca and the drug cartel," *see* Compl. ¶ 113(f), is a statement of pure opinion that cannot form the basis of defamation liability. Wolk's statement is not subject to objective verification, as it is based on Wolk's own subjective assessment of Sunwest's transactions with Banco Azteca based on facts disclosed in the Article. Put another way, the statement "cannot be shown to be true or false" because it is inherently evaluative. *Spencer v. Glover*, 2017 UT App 69, ¶ 14, 397 P.3d 780 (dismissing defamation claim as to certain statements that are not capable of objective verification).

### C. The Complaint Fails To State A Claim For Defamation *Per Se*.

Sunwest's defamation cause of action is styled as one for defamation *per se*, thus requiring Sunwest to plead statements of fact about the bank that are libelous *on their face*. *John Bean*, 480 F. Supp. 3d at 1322 (explaining that a claim for defamation *per se* is limited to "defamatory words specifically directed at the person claiming injury, which words must, on their face, and without

the aid of intrinsic proof, be unmistakably recognized as injurious") (citing *Seegmiller v. KSL, Inc.*, 626 P.2d 968, 977 n.7 (Utah 1981) (internal quotation marks and citation omitted); *see also Baum v. Gillman*, 667 P.2d 41, 43 (Utah 1983) ("Whether the defamatory words are actionable per se is to be determined from their injurious character. The words must be of such common notoriety that damage can be presumed from the words alone.").

The remaining statements complained of, however, do no such thing. Despite the Complaint's mantra-like assertions that the Article "affirmatively state[s]" that Sunwest was engaged in criminal activities or illicit financial dealings, *see, e.g.,* Compl. ¶ 132, the Article includes no such accusation. The Article nowhere states that Sunwest was engaged in any wrongdoing—let alone illegal activities or conduct violative of any applicable rules or regulations. In fact, by repeatedly asserting that the statements at issue *imply*—rather than affirmatively state— the defamatory meaning alleged, the Complaint tacitly acknowledges its pleading failures in this regard. *See, e.g.*, Compl. ¶¶ 113(d). ("Sunwest 'doesn't mind doing business with Banco Azteca' and, *implied*, is knowingly doing business with a Mexican bank linked to drug cartels that has risk and compliance concerns, is involved in bribery schemes, and is otherwise involved in nefarious illicit financial dealings." (emphasis supplied)); *id.* ¶ 113(g) ("Sunwest's representatives were 'flying cash across the border for a bank suspected of working for criminal groups that are pouring deadly fentanyl into our state,' and Sunwest is thus responsible for trafficking in fentanyl and other crimes associated with criminal groups, such as money laundering, importing and distributing narcotics, and kidnapping.")

Accordingly, the Complaint should be dismissed for failure to state a claim for defamation *per se*.[3]

### D. The Complaint Fails to State a Claim For Defamation Based On Any Unstated Implication Allegedly Conveyed.

Unable to point to any affirmative false factual statement about the bank in the Article, Sunwest strains to assert a defamation claim based on unstated implications allegedly conveyed by the true facts reported. Specifically, the Complaint repeatedly alleges that the Article "implied" or "indicated" that "that the actions of Sunwest were criminal and/or improper." *See, e.g.,* Compl. ¶¶ 113, 114, 116, 118. In predicating its defamation claim on what was purportedly insinuated by the Article, rather than on what it actually said about the bank, Sunwest appears to base its defamation claim on the disfavored theory of libel-by-implication.

Reduced to its essentials, defamation by implication reshapes the contours of what has traditionally been considered a "statement" under defamation law. At a minimum, an action for defamation must be based on a false, defamatory, and published statement of fact concerning the plaintiff. The defamation-by-implication doctrine stretches the traditional bounds of a defamation claim by turning possible inferences derived from an article into purportedly actionable "statements." In so doing, it poses a significant threat to debate on public issues protected under

---

[3] Because Sunwest is unable to state a claim for defamation *per se*, it is required to plead special damages as part of its defamation claim. *Diesel Power Source v. Crazy Carl's Turbos, Inc.*, 2:14-cv-0-826-DN, 2017 WL 1131892, at *3 (D. Utah 2017). "Special damages are those elements of damages that are the natural, but not the necessary or usual, consequence of the defendant's conduct, and typically stem from and depend upon the particular circumstances of the case." *Id.* Special damages "require the pleading of considerable detail." *Id.* Other than generalized statements of reputational harm littering the Complaint, *see, e.g.*, Compl. ¶¶ 154–55, 168–69, Sunwest pleads only that it has suffered actual damages in an amount to be proven at trial, *id.* ¶¶ 156, 170. Sunwest's failure to satisfy the pleading requirements for special damages provides further, independent grounds to dismiss the Complaint.

the First Amendment by seeking to hold the press responsible for every potential implication—no matter how vague, amorphous, and unforeseeable—that could be drawn from accurately reported and true facts. This non-literal, impressionistic view of the truth would expose journalists to tort damages for the falsity of "statements" nowhere included in the reporting at issue. As stated by the court in *Conroy v. Kilzer*, 789 F. Supp. 1457, 1462 (D. Minn. 1992), in rejecting such an anomalous result:

> [I]f Plaintiff were allowed to base recovery on his own interpretations of defendants' statements, rather than on the statements they actually made, defendants could be held liable for statements that they did not make. Holding media defendants liable for statements they did not make raises serious first amendment concerns.

To avoid inhibiting the publication of constitutionally protected speech, and because the Constitution provides a sanctuary for truth, courts in this district have made clear that the First Amendment requires a plaintiff asserting defamation by implication to make an especially rigorous showing to proceed on its claim. Specifically, the language at issue must not only be reasonably read to impart the false implication asserted, but the libel-by-implication plaintiff must also plead and prove that the defendant intended to convey the defamatory implication alleged. *Hogan v. Winder*, No. 2:12-CV-123-TS, 2012 WL 4356326, at *8–9 (D. Utah Sept. 24, 2012), *aff'd*, 762 F.3d 1096 (10th Cir. 2014) ("[T]he requirement that a plaintiff in a libel-by-implication case show that the defendant intended the implication is grounded in the First Amendment, and is therefore an issue of federal— not state—law." (citing *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092–93 (4th Cir. 1993) ("[B]ecause the constitution provides a sanctuary for truth, a libel-by-implication plaintiff must make an especially rigorous showing where the expressed facts are literally true. The language must not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses the inference."))).

Sunwest's Complaint comes nowhere close to satisfying the strict requirements necessary to state a defamation-by-implication claim.

### 1.   The Article Does Not Reasonably Convey The Implication Alleged.

The Article cannot reasonably be understood to support the alleged implication that Sunwest was involved in illicit or criminal conduct. The Article simply reports true facts—*i.e.*, that Sunwest had a business relationship with Banco Azteca, that Banco Azteca (not Sunwest) had been accused of having links to a Mexican drug cartel, and that certain individuals have raised concerns regarding Sunwest's dealings with Banco Azteca.

The absence of any such reasonable implication is only underscored when the Article is considered in its entirety, rather than through the out-of-context snippets put forward in the Complaint. *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998) (holding that "[d]efamation actions cannot be based on snippets taken out of context"); *Ramsey v. Fox News Network*, 351 F. Supp. 2d 1145, 1151 (D. Colo. 2005) ("To determine defamation, the Court must view the broadcast as a whole rather than dwell upon specific parts of the broadcast. The Court must give each part its proper weight and the entire broadcast the meaning that people of average intelligence and understanding would give it.").

Although one would not know it from the cherry-picked statements Sunwest has chosen to include in its Complaint, the Article, as a whole, represents a balanced report on concerns regarding Sunwest's relationship with Banco Azteca—the published account not only mentions, but repeatedly emphasizes, that Sunwest has not been accused of wrongdoing and that no evidence exists that Sunwest's transactions with Banco Azteca were connected to cartel activity. *See* Compl., Ex. D at 1 (stating that Wolk added "that Democrats were not suggesting that Hovde or

Sunwest had done anything illegal"); *id.* at 2 ("Neither Hovde nor Sunwest have been accused of wrongdoing nor is there evidence that the funds from Banco Azteca were connected to cartel activity."); *see also Southard v. Forbes*, 588 F.2d 140, 144 (5th Cir.) (rejecting implied defamation claim when "the innuendo [plaintiffs] claim to impart to the Forbes article [is] a meaning which the article itself denies"), *cert. denied*, *Dottino v. United States*, 444 U.S. 832 (1979).

Moreover, the Article devotes a significant portion of its reporting to statements from Hovde and representatives of Banco Azteca, allowing them, as stated in the Article, to "fight[] back against the criticism" put forward by Wolk. *See* Compl., Ex. D at 2. And "fight back" they did. The Article includes extensive comments from Hovde, explaining Sunwest's relationship with Banco Azteca and clarifying the "remittance" and "repatriation" business conducted by Sunwest. *Id.* at 2–3. Comments by a representative from the entity that owns Banco Azteca regarding (1) the fees charged by Sunwest, (2) Banco Azteca's compliance with standard regulatory requirements, and (3) his dismay regarding Wolk's comments, are also featured at length in the Article. *Id.* at 4–5; *cf. Biro v. Condé Nast*, 883 F. Supp. 2d 441, 483 (S.D.N.Y. 2012) (finding that there was no basis for a defamation-by-implication claim where author "includes [plaintiff]'s response to many of the accusations reported in the Article, and quotes many third party sources with complimentary things to say about [plaintiff]"), *aff'd*, 807 F.3d 541 (2d Cir. 2015).

The Court should reject Sunwest's attempt to isolate fragments from the Article and impute to them a defamatory connotation that the entire work will not bear.

> **2.** **Sunwest Has Not—and Cannot—Plead Facts Sufficient to Allege Press Defendants Intended the Alleged Implication.**

For the very same reasons the Article cannot reasonably be understood to support the alleged implication, Sunwest also has failed to allege sufficient facts to support the conclusion that Press

Defendants intended, adopted, or endorsed the implication of criminality or wrongdoing alleged in the Complaint. *Newton v. NBC*, 930 F.2d 662, 681 (9th Cir. 1990); *Dodds v. ABC*, 145 F.3d 1053, 1064 (9th Cir. 1998). Like the determination as to whether an article reasonably conveys the implication alleged, the determination as to whether the author "intended or endorsed" the implication "will often require an examination of the statements in the context of the article as a whole." *Biro*, 883 F. Supp. at 466.

Here, when viewed as a whole, the Article's repeated statements expressly disclaiming wrongdoing or criminality on the part of Sunwest, commentary relaying Sunwest's side of the story, and source information from individuals with knowledge of Banco Azteca's operations refutes any intention on the part of Press Defendants to communicate the implication advanced by Sunwest and contravenes any claim that Press Defendants intended to convey something different than what the Article actually reported. *Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 150 (S.D.N.Y. 2022) (dismissing defamation-by-implication claims for failure to allege the speaker intended the purported implication where the communication at issue, taken as a whole, objectively was "calculated to prevent" the very implication alleged).

Against this backdrop, Sunwest is unable to state a claim for defamation by implication as a matter of law.

### E. As a Public Figure, Sunwest Was Required—but Failed—Plausibly To Allege Actual Malice.

Sunwest qualifies as a public figure under the First Amendment. It therefore must plausibly allege facts that, if proven, would demonstrate that Press Defendants published the alleged defamatory statements with "actual malice." The Complaint's factual allegations fail to establish that Press Defendants knew the statements were false or in all probability false but nevertheless

proceeded to publish them. This deficiency provides a separate and independent basis for this Court to dismiss the Complaint.

### 1.    Sunwest Is a Public Figure Under the First Amendment.

For purposes of defamation, the First Amendment differentiates private figures from public figures. The latter category consists of those individuals "who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention," assume a place in the public arena and thereby both "run[] the risk of closer public scrutiny" and achieve "access to the channels of effective communication" to respond to alleged falsehoods published about them. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342–44 (1974). In view of our nation's "profound national commitment" to debate on public issues, *see N.Y. Times v. Sullivan*, 376 U.S. at 270, those who have chosen to engage in public endeavors or participate in public debate accept a greater risk of critical public comment and scrutiny. *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1292 (D.C. Cir. 1980) ("They thus accept the risk that the press, in fulfilling its role of reporting, analyzing, and commenting on well-known persons and public controversies, will focus on them and, perhaps, cast them in an unfavorable light.").

As relevant here, a line of cases establishes the public figure status of highly regulated corporate entities like Sunwest. Consistent with First Amendment policy, these cases acknowledge that corporations subject to strict regulation by state and federal authorities qualify as public by virtue of their voluntary decision to enter a business that necessarily invites public concern and scrutiny. *Beech Aircraft Corp. v. Nat'l Aviation Underwriters*, 11 Media L. Rep. (BNA) 1401 (D. Kan. 1984) (reported and summarized in Tracy A. Bateman, *Who is "public figure" for purposes of defamation action*, 19 A.L.R. 5th 1, § 147 & nn. 21, 50, 51 (originally published in 1994));

*Reliance Ins. Co. v. Barron's*, 442 F. Supp. 1341, 1348 (S.D.N.Y. 1977); *Coronado Credit Union v. KOAT Television, Inc.*, 656 P.2d 896, 903–05 (N.M. Ct. App. 1982); *see also Jadwin v. Minneapolis Star & Tribune Co.*, 367 N.W.2d 476, 483–88 (Minn. 1985); *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1393–94 (8th Cir. 1997) (referring to government regulatory oversight in holding that company is a public figure).

The determination of Sunwest's public figure status is a question of law for the Court. *Carr v. Forbes, Inc.*, 259 F.3d 273, 278 (4th Cir. 2001); *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 724 (5th Cir. 1980) (holding the question of a libel plaintiff's public figure status "is pervasive, and it should be answered as soon as possible"). Courts therefore regularly resolve the issue on preliminary motions on the basis of the pleadings. *See, e.g.*, *Besen v. Parents & Friends of Ex-Gays, Inc.*, No. 3:12-cv-204, 2012 WL 1440183, at \*4–5 (E.D. Va. Apr. 25, 2012) (holding spokesman for non-profit advocacy group a limited purpose public figure on motion to dismiss); *Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 140–42 (D.D.C. 2016) (holding Kazakhstani businessman a limited purpose public figure on motion to dismiss); *Boley v. Atl. Monthly Grp.*, 950 F. Supp. 2d 249, 260–62 (D.D.C. 2013) (finding plaintiff described as Liberian "warlord" who attempted to influence Liberian Civil War a limited purpose public figure).

As the Complaint itself makes abundantly clear, Sunwest is a state-chartered and highly regulated banking corporation subject to a vast degree of government oversight, which itself necessitates an extraordinary level of interaction with government agencies. *See, e.g.*, Compl. ¶¶ 27, 33–71 (explaining that Sunwest, as a financial institution, is regulated by, *inter alia*, the Federal Deposit Insurance Corporation and the Utah Department of Financial Institutions, and that

Sunwest is subject to a host of rules, requirements, and reviews). Sunwest is thus a paradigmatic

example of a corporate public figure plaintiff for First Amendment purposes.

      **2.**    **Sunwest Has Not and Cannot Plead "Actual Malice" As To the Challenged Statements.**

Because Sunwest qualifies as a public figure, it must plausibly allege that the statements

complained of were published with "actual malice." At the pleading stage, a public figure must

"plead plausible grounds to infer actual malice by alleging enough facts to raise a reasonable

expectation that discovery will reveal evidence of actual malice." *Biro*, 807 F.3d at 546 (quoting

*Twombly*, 550 U.S. at 556) (alterations and internal marks omitted). Sunwest has failed to do so.

To ensure that libel plaintiffs such as Sunwest do not misuse tort law to retaliate against

those who report about legitimate matters of public concern, the U.S. Supreme Court established

the "actual malice" standard. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). This

standard, which protects "uninhibited, robust, and wide-open" debate on public issues, requires

proof that a libel defendant published a false statement with knowledge that it was false, or with

reckless disregard as to its truth or falsity (the "constitutional malice" standard).[4] *N.Y. Times v.*

*Sullivan*, 376 U.S. at 270; *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 508 (1991). It

reflects that public figures, such as Sunwest, necessarily accept a greater risk of critical public

scrutiny and commentary. *Lohrenz v. Donnelly*, 350 F.3d 1272, 1278–79 (D.C. Cir. 2003).

"In the wake of *Iqbal* and *Twombly*, adequately pleading actual malice is an onerous task."

*Earley v. GateHouse Media Pa. Holdings, Inc.*, 3:12-cv-1886, 2013 WL 5466149, at *6 (M.D. Pa.

---

[4] "Reckless disregard" has been specifically defined by the U.S. Supreme Court as publishing while actually entertaining "serious doubts as to the truth of publication," *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), or publishing while subjectively possessing a "high degree of awareness of [the] probable falsity" of the publication, *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964).

Sept. 30, 2013). It is met only with sufficient allegations that the defendant "realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 n.30 (1984). Constitutional malice therefore requires proof here of Press Defendants' subjective state of mind at the time of publication. *St. Amant*, 390 U.S. at 731. The test is entirely a subjective one, and proof of negligence alone is insufficient. *Sullivan*, 376 U.S. at 279–80; *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 45 (D.D.C. 2002) ("The standard for actual malice is not what a 'reasonable person' or a 'prudent publisher' would do, nor can it be defined as 'an extreme departure from professional standards.'" (citations omitted)), *aff'd*, 350 F.3d 1272 (D.C. Cir. 2003).

The Complaint's unadorned assertions of actual malice do not satisfy Sunwest's pleading burden because they simply recite the bare, conclusory allegations that Press Defendants "acted with knowledge of the facility of the Article, or with reckless disregard of its truthfulness." Compl. ¶¶ 149–50, 166. "This kind of conclusory allegation — a mere recitation of the legal standard — is precisely the sort of allegation[] that *Twombly* and *Iqbal* rejected." *Mayfield v. NASCAR*, 674 F.3d at 378. The Complaint's halfhearted allegations that Press Defendants somehow failed to properly investigate the subject matter of the Article or otherwise violated the rules of journalistic ethics, *see* Compl. ¶¶ 120–22, likewise fail to plead actual malice. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) ("[F]ailure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard."); *Buttar v. Hearst Commc'ns*, No. 21-cv-5566, 2022 WL 1215307, at *9 (N.D. Cal. Apr. 25, 2022) ("Defendant's alleged failure to investigate by contacting preferred sources proposed by Plaintiff is insufficient to demonstrate the articles at issue were published with *knowledge* of their falsity,

or reckless disregard for their truth." (emphasis in original)); *Chang v. Michiana Telecasting Corp.*, 900 F.2d 1085, 1090 (7th Cir. 1990) (refusing to "use the law of libel to enforce journalistic ethics").

Devoid of any well-pleaded facts that would support the governing constitutional standard, Sunwest cannot state a defamation claim upon which relief may be granted. *See Parisi v. Sinclair*, 845 F. Supp. 2d 215, 218–19 (D.D.C. 2012) (granting Rule 12(b)(6) motion to dismiss where "complaint contain[ed] *no* factual allegations" to support actual malice claim (emphasis in original)).

## IV. Sunwest—as a Corporate Plaintiff—Cannot Bring Suit for Being Placed in a False Light.

Utah follows the Restatement (Second) of Tort's formulation of the right to privacy, which includes false light claims. *Vasquez v. Trinity Mission Health & Rehab of Provo, LLC*, No. 2:11-cv-1002-EJF, 2013 WL 4095157, at *19 (D. Utah Aug. 13, 2013) ("Utah has adopted the Restatement (Second) of Torts section 652E (1977) for invasion of privacy torts[.]"). Pursuant to the Restatement, a false light claim requires that a publication is "highly offensive to a reasonable person." Restatement (Second) of Torts § 652E. Unlike actions for defamation, false light is "designed to compensate for falsehoods that injure feelings rather than reputation." Robert D. Sack, SACK ON DEFAMATION § 12.3 (5th ed. 2017). Recognizing that a corporation cannot be offended, has no "feelings," and thus enjoys no right to privacy, the Restatement provides that a corporation cannot bring suit for being placed in a false light. *See* Restatement (Second) of Torts § 652I cmt. c.

Sunwest's cause of action sounding in false light is therefore barred as a matter of law.

## V. Sunwest's "Cause of Action" for a Permanent Injunction Fails as a Matter of Law.

Sunwest's third and final cause of action seeks a permanent injunction against Press Defendants. Compl. ¶¶ 171–77. But an injunction is a remedy, not an independent cause of action. *See, e.g.*, *Firehole River Capital v. Supurva Healthcare Grp.*, 2:21-cv-153-DBB, 2021 WL 4291087, at *8 (D. Utah Sept. 21, 2021) (dismissing a claim for "preliminary injunction" on a Rule 12(b)(6) motion "because a preliminary injunction is a remedy, not a cause of action"). Sunwest's final cause of action should thus be rejected out of hand. *Id.*

In any event, injunctive relief is a remedy that can only be granted if Sunwest prevails on a legally cognizable cause of action. *Id.* For the reasons detailed above, Sunwest is unable to state a claim for either defamation or false light, thereby foreclosing any request for injunctive relief. Even if Sunwest could somehow state a claim for either cause of action, injunctions raise significant First Amendment concerns when directed to allegedly defamatory speech. Indeed, in the vast majority of cases in which courts have considered granting an injunction directed at otherwise protected speech, they have refused to do so on the basis that the injunction would constitute an unconstitutional prior restraint.[5]

---

[5] *See, e.g., Crosby v. Bradstreet Co.*, 312 F.2d 483, 485 (2d Cir. 1963); *Mahmoodian v. Pirnia*, No. 3:11-cv-005, 2012 WL 4458160, at *9 (W.D. Va. June 7, 2012); *Am. Univ. of Antigua Coll. of Med. v. Woodward*, No. 10-10978, 2010 WL 5185075, at *3 (E.D. Mich. Dec. 16, 2010); *Gunder's Auto Ctr. v. State Farm Ins.*, 617 F. Supp. 2d 1222, 1225 (M.D. Fla. 2009), *aff'd*, 442 F. App'x 819 (11th Cir. 2011); *Tilton v. Capital Cities/ABC Inc.*, 827 F. Supp. 674, 682 (N.D. Okla. 1993); *Konigsberg v. Time, Inc.*, 288 F. Supp. 989, 989 (S.D.N.Y. 1968); *Am. Malting Co. v. Keitel*, 217 F. 672, 674 (S.D.N.Y. 1914); *Animal Rights Found. of Fla., Inc. v. Siegel*, 867 So. 2d 451, 458 (Fla. Dist. Ct. App. 2004); *Cohen v. Advanced Med. Grp. of Ga., Inc.*, 496 S.E.2d 710, 711 (Ga. 1998); *High Country Fashions, Inc. v. Marlenna Fashions, Inc.*, 357 S.E.2d 576, 577 (Ga. 1987); *Brannon v. Am. Micro Distribs., Inc.*, 342 S.E.2d 301, 302–03 (Ga. 1986); *Montgomery Ward & Co. v. United Retail, Wholesale & Dep't Store Emps.*, 70 N.E.2d 75, 87 (Ill. 1948); *St. Margaret Mercy Healthcare Ctrs., Inc. v. Ho*, 663 N.E.2d 1220, 1224 (Ind. Ct. App. 1996); *Hill v. Petrotech Res. Corp.*, 325 S.W.3d 302, 305 (Ky. 2010); *Guste v. Connick*, 5115 So. 2d 436, 438 (La. 1987); *Greenberg v. Burglass*, 229 So. 2d 83, 87 (La. 1969); *State ex rel. Liversey v. Judge of Civil Dist. Court*, 34 La. Ann. 741, 746 (1882); *Wolf v. Harris*, 184 S.W. 1139, 1141

## **CONCLUSION**

For the reasons set forth above, the Court should grant Press Defendants' Motion, dismiss Sunwest's Complaint in its entirety and with prejudice, and award Sunwest its reasonable attorneys' fees, costs, and expenses.

Respectfully submitted: December 13, 2024.

*/s/ C. Michael Judd*

Michael J. Grygiel (*phv forthcoming*)
Kelly L. McNamee (*phv forthcoming*)
**GREENBERG TRAURIG, LLP**

C. Michael Judd
**PARSONS BEHLE & LATIMER**

*Attorneys for Defendants Gannett Co., Inc. and Journal Sentinel Inc.*

---

(Mo. 1916); *Marx & Haas Jeans Clothing Co. v. Watson*, 67 S.W. 391, 395 (Mo. 1902); *Flint v. Hutchinson Smoke Burner Co.*, 19 S.W. 804, 806 (Mo. 1892); *Lindsay & Co. v. Mont. Fed'n of Labor*, 96 P. 127, 131 (Mont. 1908); *Pebble Brook, Inc. v. Smith*, 356 A.2d 48 (N.J. Super. Ct. Ch. Div. 1976); *O'Leary v. Police Dep't of N.Y.*, 409 N.Y.S.2d 676, 678 (Sup. Ct. N.Y. Cnty. 1978); *League for Peace with Justice in Palestine v. Newspaper P.M.*, 65 N.Y.S.2d 480, 481 (Sup. Ct. N.Y. Cnty. 1974); *Hajek v. Bill Mowbray Motors, Inc.*, 647 S.W.2d 253, 255 (Tex. 1983); *Ex parte Tucker*, 220 S.W. 75, 76 (Tex. 1920); *Corpus Christi Caller-Times v. Mancias*, 794 S.W.2d 852, 854 (Tex. App. 1990); *Pirmantgen v. Feminelli*, 745 S.W.2d 576, 578 (Tex. App. 1988); *Mitchell v. Grand Lodge, Free & Accepted Masons of Tex.*, 121 S.W. 178, 179 (Tex. Civ. App. 1909).

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2024, I served a true and correct copy of the above *Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Utah's Uniform Public Expression Protection Act and/or Fed. R. Civ. P. 12(b)(6)* by electronic filing on the parties of interest as follows:

Ryan B. Bell (rbell@kba.law)
Shelby Jaye Hughes (shughes@kba.law)
**KUNZLER BEAN & ADAMSON**
50 W. Broadway, 10th Floor
Salt Lake City, Utah 84101

*Attorneys for Plaintiff Sunwest Bank*

_/s/ C. Michael Judd_____