## THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| SUNWEST BANK, a Utah corporation,<br><br>    Plaintiff,<br><br>v.<br><br>GANNETT CO., INC., a Delaware corporation, and JOURNAL SENTINEL INC., a Wisconsin corporation;<br><br>    Defendants. | **ORDER GRANTING IN PART AND DENYING IN PART [ECF NO. 38] DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**<br><br><br>Case No. 2:24-cv-00876-DBB-JCB<br><br>District Judge David Barlow<br><br>Magistrate Judge Jared C. Bennett |

Before the court is Gannett Co., Inc., and Journal Sentinel, Inc.'s (together "Defendants") motion to dismiss Plaintiff Sunwest Bank's amended complaint. For the reasons stated below, the motion is granted in part and denied in part.

### BACKGROUND

Sunwest Bank ("Sunwest") is a Utah-based commercial bank.[1] Its CEO Eric Hovde ("Mr. Hovde") was the Republican candidate for United States Senate in Wisconsin during the 2024 election cycle.[2] On September 19, 2024, the Milwaukee Journal Sentinel published an article titled "Democrats question Eric Hovde over his bank's $26M deal with a troubled Mexican

---

[1] Am. Compl. ¶ 28, ECF No. 37, filed April 23, 2025.
[2] *Id.* at ¶¶ 115, 166.

1

bank" (the "Article").[3] The Article discusses the business dealings between Banco Azteca, a Mexican financial institution, and Sunwest to frame its reporting on Wisconsin Democrats criticism of Mr. Hovde.[4] It focuses on statements from Democratic Party spokesman Arik Wolk ("Mr. Wolk"), who criticized a repatriation transaction between Banco Azteca and Sunwest as part of a larger discussion of Mr. Hovde's qualifications for office.[5]

Sunwest alleges that several statements made in the Article are false or imply a falsehood, beginning with statements about Banco Azteca (the "Banco Azteca Statements"):

- "Banco Azteca. . . has had its share of problems in recent years. Accused in past news stories of having links to the Mexican drug cartel."[6]

- "Banco Azteca has been '[d]ropped as a financial partner by some U.S. banks because of 'risk and compliance concerns.'"[7]

- "Banco Azteca is 'now caught up in a Texas bribery scheme with an American congressman.'"[8]

- "[A]s recent as 2021, Banco Azteca had no correspondent banks in the U.S. with which it could transfer U.S. currency."[9]

Sunwest next claims that two statements in the Article that refer to it directly are defamatory (the "Sunwest Statements"):

- Sunwest "doesn't mind doing business with [Banco Azteca]."[10]

---

[3] Daniel Bice, *Democrats question Eric Hovde over his bank's $26M deal with a troubled Mexican bank*, Milwaukee Journal Sentinel, Sep. 19, 2024, https://perma.cc/XP8V-NFA2, hereinafter "Art."). The court considers the Article because it is referred to in the complaint, is central to Sunwest's claim, and the parties do not dispute the document's authenticity. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).
[4] Am. Compl. ¶¶ 112–114.
[5] *Id.* at ¶¶ 109–111, 115.
[6] *Id.* at ¶ 114 a.
[7] *Id.* at ¶ 114 b.
[8] *Id.* at ¶ 114 c.
[9] *Id.* at ¶ 114 i.
[10] *Id.* at ¶ 114 d.

- "Banco Azteca sent $26.2 million in cash to Sunwest on four airplane flights."[11]

Sunwest also claims that the statements made by Mr. Wolk were defamatory (the "Wolk Statements"):

- "Sunwest's transactions with Banco Azteca are 'extraordinarily concerning,' especially given the alleged past ties between Azteca and the drug cartel."[12]

- "'Hovde is willing to do anything to enrich himself, even flying cash across the border for a bank suspected of working for criminal groups that are pouring deadly fentanyl into our state,' Wolk claimed."[13]

Sunwest also alleges that the Article falsely implies that it has acted improperly, including alleged implications that:

- "Sunwest is accepting the repatriation of U.S. dollars through the Federal Reserve in an inappropriate and illegal scheme."[14]

- "Sunwest is in a relationship with a bank with links, ties, or close relations with Mexican cartels."[15]

- "Sunwest is operating in a nefarious, illegal manner. Indeed, a reasonable person would conclude that the statements—that Banco Azteca is a 'bank linked to Mexican drug cartel' and 'Multiple U.S. banks have cut ties with Banco Azteca'—indicate that Sunwest is breaking the law by providing correspondent banking services to Banco Azteca."

Since its publication, Sunwest alleges that the Article has been viewed online by thousands of individuals.[16] Sunwest has also allegedly been contacted by customers to "discuss their concerns about the accusations" in the Article.[17] Sunwest alleges that the Article has

---

[11] *Id.* at ¶ 114 e.
[12] *Id.* at ¶ 114 f.
[13] *Id.* at ¶ 115.
[14] *Id.* at ¶ 114 h.
[15] *Id.* at ¶ 114 j.
[16] *Id.* at ¶ 156.
[17] *Id.* at ¶ 157.

harmed its reputation, its ability to attract and retain customers, and its potential to grow into new markets.[18]

Sunwest brings defamation, defamation per se, and false light claims against Defendants based on the Article.[19] Defendants filed their Motion to Dismiss on May 29, 2025, arguing that Sunwest fails to state a claim under the Utah Uniform Public Expression Protection Act (the "UPEPA") and Federal Rule of Civil Procedure 12(b)(6).[20] Sunwest filed its opposition to the Motion on June 26, 2025,[21] and Defendants replied on July 10, 2025.[22]

## STANDARD

Defendants ask the court to dismiss Sunwest's complaint pursuant to UPEPA, which requires a two-part analysis in federal court.[23] "First, the court must determine whether UPEPA applies to the action."[24] UPEPA applies "to a cause of action asserted in a civil action" based on "exercise of the right of freedom of speech or of the press, the right to assemble or petition, or the right of association, guaranteed by the United States Constitution or Utah Constitution, on a matter of public concern."[25] Defendants argue that their conduct is covered by UPEPA because the Article "is protected at the heart of the First Amendment."[26] Sunwest does not dispute that UPEPA applies.

---

[18] *Id.* at ¶ 161.
[19] Am. Compl. 28–30.
[20] Defs.' Mot. to Dismiss Pl.'s Am. Compl. ("MTD"), ECF No. 38, filed May 29, 2025.
[21] Mem. in Opp'n to Defs.' Mot. to Dismiss ("Opp."), ECF No. 40, filed June 26, 2025.
[22] Defs.' Reply Br. in Further Supp. ("Reply"), ECF No. 44, filed July 10, 2025.
[23] Utah Code § 78B-25-107 (1).
[24] *UHS of Provo Canyon, Inc. v. Bliss*, No. 2:24-cv-163, 2024 WL 4279243, at *4 (D. Utah Sept. 2024).
[25] Utah Code § 78B-25-102(2).
[26] MTD 6.

Thus, the court moves to the second step and determines whether Sunwest "has a legally viable cause of action."[27] UPEPA requires the moving party to establish that "the responding party failed to state a cause of action upon which relief can be granted."[28] UPEPA "essentially mimics the language of Rule 12(b)(6)" so the court applies this standard to Sunwest's claims.[29]

"Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to the plaintiff, lacks enough facts to state a claim to relief that is plausible on its face."[30] "In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings."[31] However "[t]he court is not obligated to accept merely conclusory allegations or unwarranted inferences from the factual allegations."[32]

---

[27] *UHS of Provo Canyon,* 2024 WL 4279243, at *4 (citing Utah Code § 78B-25-107(1)(c )(ii)(A)).

[28] Utah Code § 78B-25-107 (1)(c )(ii)(A). In state court, if the Defendants can meet this standard, UPEPA requires that "the court shall dismiss with prejudice [the] cause of action." Utah Code § 78B-25-107(1). However, Defendants concede in their motion that UPEPA's prejudicial dismissal requirement does not apply in federal court because it conflicts with the Federal Rules of Civil Procedure. MTD 9 n.2; *see also Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,* 890 F.3d 828, 834 (9th Cir.), *amended,* 897 F.3d 1224 (9th Cir. 2018).

[29] *UHS of Provo Canyon,* 2024 WL 4279243, at *6 (quoting *Project Veritas v. Leland Stanford Junior Univ.*, No. C21-1326 TSZ, 2022 WL 1555047, at *4 (W.D. Wash. 2022)).

[30] *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (quoting *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 764 (10th Cir. 2019)). Sunwest argues that a complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no sets of facts in support of his claim which would entitle him to relief." Opp'n 8. This has not been the pleadings standard since the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

[31] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1130 (10th Cir. 2024) (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)) (also quoting *Ruiz v. McDonald*, 299 F.3d 1173, 1181 (10th Cir. 2002)) (cleaned up).

[32] *Intermountain Stroke Ctr., Inc. v. Intermountain Health Care, Inc.*, No. 2:13-cv-00909, 2014 WL 1320281, at *4 (D. Utah 2014), *aff'd*, 638 F. App'x 778 (10th Cir. 2016); *see also Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994) (courts are not bound by "unwarranted inferences"); *Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521 (10th Cir. 1987) (rejecting inference that reports were understood as defamatory because inference was supported "only by speculation and conjecture").

## DISCUSSION

### I.    Defamation

"To prevail on a claim of defamation, a plaintiff must show that '(1) the defendant published the statements in print or orally concerning the plaintiff; (2) the statements were false; (3) the statements were not subject to privilege; (4) the statements were published with the requisite degree of fault; and (5) the statements resulted in damages.'"[33] That said, "state defamation law may not permit causes of action that impair state or federal constitutional freedom of expression or freedom of the press."[34] At the motion to dismiss stage, the "threshold issue" is whether the article is "capable of sustaining a defamatory meaning."[35]

"Whether a statement is capable of sustaining a defamatory meaning is a question of law."[36] "Under Utah law, a statement is defamatory if it impeaches an individual's honesty, integrity, virtue, or reputation and thereby exposes the individual to public hatred, contempt, or ridicule."[37] "[I]n determining whether a particular statement fits within the rather broad definition of what may be considered defamatory, the guiding principle is the statement's tendency to injure a reputation in the eyes of its audience."[38]

"A publication is not defamatory simply because it is nettlesome or embarrassing to a plaintiff, or even because it makes a false statement about the plaintiff. . . . If no defamatory meaning can reasonably be inferred by reasonable persons from the communication, the action

---

[33] *Pipkin v. Acumen*, 2020 UT App 111, ¶ 16, 472 P.3d 315, 322 (quoting *DeBry v. Godbe*, 1999 UT 111, ¶ 8, 992 P.2d 979, 982) (cleaned up).
[34] *Id.*
[35] *West v. Thomson Newspapers*, 872 P.2d 999, 1008 (Utah 1994).
[36] *Id.*
[37] *Id.*
[38] *Id.* (citing *Cox v. Hatch*, 761 P.2d 556, 561 (Utah 1988)).

must be dismissed for failure to state a claim."[39] "In making this determination, a court cannot limit its analysis to isolated words or sentences. Instead, it 'must weigh competing definitions and make sense of the context' without 'indulging inferences in favor of the nonmoving party' and decide whether the statement tends 'to injure [the plaintiff's] reputation in the eyes of its audience.'"[40]

Further, "[i]f the context makes clear a reasonable reader would not accept the statements at face value, the statements do not cause damage to the plaintiff's reputation and are therefore not defamatory."[41] For example, in *Mast v. Overson*, the statements were not defamatory because the context let the reader know the statements were part of a political debate.[42] The court initially pointed out "that this dispute gr[e]w out of spirited public debate" and the "First Amendment was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people."[43] And given that the statements were part of an ongoing political debate in the community, they would "necessarily be taken with a grain of salt."[44] Thus, they were not defamatory.[45]

Similarly, in *Hogan v. Winder*, an article accusing the plaintiff of "performance issues" and "[e]xtortion and blackmail" was not defamatory because "the context makes clear that the reason for [plaintiff]'s termination is the subject of an ongoing, obviously nasty, employment

---

[39] *Cox*, 761 P.2d at 561.
[40] *Pipkin*, 2020 UT App at ¶ 16 (first quoting *O'Connor v. Burningham*, 2007 UT 58, ¶ 27, 165 P.3d 1214, 1222; and then quoting *West*, 872 P.2d at 1008).
[41] *Hogan v. Winder*, 762 F.3d 1096, 1106 (10th Cir. 2014) (citing *Mast v. Overson*, 971 P.2d 928, 933 (Utah Ct. App. 1998)).
[42] *Mast*, 971 P.2d at 932.
[43] *Id.* (citation modified).
[44] *Id.*
[45] *Id.*

dispute."[46] The article in *Hogan* gave both sides the opportunity to share their story.[47] Although one side made defamatory statements about the other, the article as a whole was not defamatory because it clearly framed the statements as part of an ongoing dispute.[48]

As another example, in *West v. Thompson*, the local mayor contended that a newspaper editorial defamed him when it stated that he was attempting to "manipulate the press."[49] Holding that it was not defamatory, the Utah Supreme Court first noted that "state defamation law may not permit causes of action that impair state or federal constitutional freedom of expression or freedom of the press."[50] The court explained that "most readers would view [the alleged defamatory statements] as exaggerated commentary expressing [Defendant's] frustration in dealing with [the mayor]."[51] And "[e]xaggerated commentary such as this is not likely to damage [the mayor]'s reputation."[52] "Accordingly, even though the criticism may have embarrassed or annoyed him and even though it may have been false, it cannot be said that it exposed him to public hatred, contempt, or ridicule."[53]

The court begins by assessing each of the allegedly defamatory claims, then turning to Sunwest's defamation per se and defamation-by-implication arguments.

---

[46] *Hogan*, 762 F.3d at 1106–07.
[47] *Id.*
[48] *Id.*
[49] *West*, 872 P.2d at 1001, 1003.
[50] *Id.* at 1004.
[51] *Id.* at 1010.
[52] *Id.*
[53] *Id.* at 1011.

### a. Banco Azteca Statements

Defendants argue that the Banco Azteca statements do not defame Sunwest because they are not about Sunwest.[54] Sunwest responds that Defendants miss the point, and the court must look at the broader context to see that the article implicates Sunwest in Banco Azteca's alleged actions.[55] Sunwest does not dispute that these statements are not referring to Sunwest.

The court concludes that these statements about another bank cannot support a defamation claim. The Banco Azteca statements, alone, cannot harm *Sunwest's* reputation. Thus, insofar as the Plaintiff claims that these specific statements are defamatory, the claims are denied. That said, the court, as explained below, will consider the Banco Azteca statements as part of the context for the statements in the article that are about Sunwest.

### b. Mr. Wolk's Statements

Sunwest next alleges that Mr. Wolk's statements within the article are false and defamatory.[56] Defendants argue that Mr. Wolk's statements are opinions that are not subject to objective verification, so they cannot be defamatory.[57] Sunwest responds that Mr. Wolk's statements are not opinions but are meant to convey facts.[58] It claims Mr. Wolk's statement that Sunwest's business with Banco Azteca was "extraordinarily concerning" is "an educated conclusion," not an opinion, so it is defamatory.[59] Sunwest further claims that, even if Mr.

---

[54] MTD 7–9.
[55] Opp. 21–27.
[56] Am. Compl. ¶¶ 114 f, g, 115.
[57] MTD 10.
[58] Opp. 27–30.
[59] Opp. 28.

Wolk's statements are opinions, Mr. Wolk expressed a factual basis for the opinion that is subject to a defamatory interpretation.[60]

"[A] statement can only be actionable as defamation if it is capable of being proven to be true or false."[61] "A plaintiff is definitionally unable to meet this requirement with regard to statements of pure opinion because such statements 'are incapable of being verified' and therefore 'cannot serve as the basis for defamation liability.'"[62] "The determination of whether a particular statement qualifies as opinion thus presents a question of law for the court to decide."[63] As an example, the Utah Supreme Court held in *West* that "[w]hether [plaintiff] actually intended to dupe voters into electing him mayor by misrepresenting his position on municipal power is something only [plaintiff] himself knows, not something that is subject to objective verification."[64] The accusation was thus a non-defamatory opinion.[65]

First, Mr. Wolk's statement that Sunwest's activity is "extraordinarily concerning" is not capable of being proven true or false.[66] The Article restates Mr. Wolk's subjective belief about Sunwest's transactions that no reasonable reader would take to convey a statement of fact.[67] Readers would understand the intent behind this statement, as it was made by an identified political party figure trying to convince readers not to vote for Mr. Hovde. Accordingly, whether

---

[60] Opp. 28–29.
[61] *Keisel v. Westbrook*, 2023 UT App 163, ¶ 36, 542 P.3d 536.
[62] *Davidson v. Baird*, 2019 UT App 8, ¶ 31, 438 P.3d 928, 938 (quoting *West*, 872 P.2d at 1015).
[63] *Keisel*, 2023 UT App 163 at ¶¶ 35–42 (citing *West*, 872 P.2d at 1008).
[64] *West*, 872 P.2d at 1019.
[65] *Id*.
[66] *See Keisel* at ¶ 37; *Nunes v. Rushton*, 299 F. Supp. 3d 1216, 1230 (D. Utah 2018) (comment that plaintiff was engaged in 'unethical conduct' was an opinion that could not support a claim for defamation).
[67] *See Spencer v. Glover*, 2017 UT App 69, ¶ 12, 397 P.3d 780, 785 (statement that attorney was the "worst ever" expressed defendant's subjective belief, so it could not be defamatory).

Sunwest's business with Banco Azteca is or is not concerning is an opinion that cannot be defamatory.[68]

Next, Mr. Wolk's statement that Mr. Hovde is willing to do anything to enrich himself also cannot be defamatory to Sunwest. For starters, readers would have to go far beyond what is written on the page to reach Sunwest's implication that Sunwest itself is willing to do anything to enrich itself.[69] And Mr. Hovde's willingness or lack thereof to do "anything" to enrich himself is not capable of being proven true or false.[70] Regardless, any reasonable reader would understand that Mr. Wolk's statement was a hyperbolic opinion from a known political opponent.[71] Mr. Wolk made statements about Mr. Hovde during a heated political campaign, which reasonable readers would understand as "merely hyperbole and rhetorical flourish."[72] Therefore, Mr. Wolk's statements in the Article do not result in Defendants defaming Sunwest.

But the court also considers whether the factual assertions Mr. Wolk bases his opinion on are defamatory.[73] As explained by the Utah Supreme Court, expressions of opinion are protected, but "this protection is 'abused' when the opinion states or implies facts that are false and

---

[68] *See Davidson*, 2019 UT App 8, ¶ 32 (statements that city manager "destroyed" a city and residents had "no idea what [she] was capable of" were statements of opinion); *Hogan v. Winder,* No. 2:12-cv-123, 2012 WL 4356326, at *8 (D. Utah 2012), *aff'd*, 762 F.3d 1096 (10th Cir. 2014) (statements used to convey one's subjective belief about another's behavior were not defamatory).

[69] *LifeVantage Corp. v. Domingo*, No. 2:13-cv-1037, 2016 WL 4705540, at *7 (D. Utah Sept. 8, 2016) ("merely calling a person selfish or self-serving in his or her business dealings, without more, cannot be defamatory").

[70] *West*, 872 P.2d at 1019 ("Whether [plaintiff] actually intended to dupe voters into electing him mayor by misrepresenting his position on municipal power is something only [plaintiff] himself knows, not something that is subject to objective verification.").

[71] *Westmont Residential LLC v. Buttars*, 2014 UT App 291, ¶ 24, 340 P.3d 183, 189 (quoting *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 50 (1988)) ("rhetorical hyperbole. . . is not defamatory because it cannot 'reasonably be interpreted as stating actual facts.'").

[72] *Hogan*, 762 F.3d at 1108 (applying Utah law to find that statement that one party was extorting or blackmailing the other was not defamatory).

[73] *See West*, 872 P.2d at 1015 (Utah's Constitution "protect[s] expressions of opinion, [but] this protection is 'abused' when the opinion states or implies facts that are false and defamatory.").

defamatory."[74] In *Spencer v. Glover*, the Utah Court of Appeals analyzed an online review made about an attorney by a former client, who accused him of being the "worst ever."[75] The court held this was a "subjective belief" that amounted to rhetorical hyperbole, so it could not be defamatory.[76] But the court then reviewed the underlying facts the opinion was based on to determine if those underlying facts were defamatory.[77]

Thus, here, the court also reviews whether the underlying facts Mr. Wolk uses to support his opinion are defamatory. Those underlying facts are:

- Sunwest performed transactions with Banco Azteca, a bank allegedly linked to a drug cartel.[78]

- Hovde, as CEO of Sunwest, was "flying cash across the border for a bank suspected of working for criminal groups that are pouring deadly fentanyl into our state."[79]

But "[i]f the context makes clear a reasonable reader would not accept the statements at face value, the statements do not cause damage to the plaintiff's reputation and are therefore not defamatory."[80]

Here, the Article does not treat Mr. Wolk's statements like facts, but clearly frames them as a political accusation about Mr. Hovde. And as explained in *Mast* and *Hogan*, statements that are clearly part of an ongoing dispute, including political ones, are unlikely to be taken at face value.[81] Directly before making the statements, Mr. Wolk is identified as the "spokesman of the

---

[74] *Id.*

[75] *Spencer v. Glover*, 2017 UT App 69, ¶ 12, 397 P.3d 780, 785.

[76] *Id.*

[77] *Id.* at ¶ 22.

[78] Art. 1.

[79] Art. 2.

[80] *Hogan*, 762 F.3d at 1106 (citing *Mast*, 971 P.2d at 933).

[81] *See Mast*, 971 P.2d at 932 (statements were not defamatory because context informed the reader that they were part of a political debate and would "necessarily be taken with a grain of salt."); *Hogan*, 762 F.3d at 1106–07 (statements were not defamatory because "the context makes clear that the reason for Hogan's termination is the

Democratic Party."[82] The article's title also starts with "Democrats question."[83] And the second comment is made explicitly about Hovde, an identified political candidate.[84] Further, immediately after Mr. Wolk's opinion that the transactions were concerning, he states that he was "not suggesting that Hovde or Sunwest had done anything illegal."[85] The article also offers Mr. Hovde's statements "fighting back against the criticism," contextualizing Mr. Wolk's statements as one side of an ongoing debate while also presenting both sides.[86] And the Article never says that Mr. Wolk is correct or endorses his opinion. No reasonable reader could conclude that Mr. Wolk's statements conveyed factual information about Sunwest—they would understand they were hyperbolic opinions by a politically motivated figure about a political opponent.

Taken as a whole, reasonable readers would understand that Mr. Wolk's statements are the opinion of a political operative during a campaign meant to muddy the waters on an opponent, not to state facts about Sunwest. His statements are either protected opinion or not capable of holding a defamatory meaning in context. Accordingly, Sunwest has failed to state a claim for defamation based on Mr. Wolk's statements.

---

subject of an ongoing, obviously nasty, employment dispute."); *See also Hogan*, 2012 WL 4356326, at *8 ("just because an article is not an editorial does not mean the article will not contain opinion. Indeed, that someone holds a particular opinion is a verifiable fact that may qualify as hard news if it is newsworthy.").

[82] Art. 1.

[83] *Id.*

[84] Art. 2.

[85] Art. 1.

[86] Art. 2.

### c. Sunwest Statements

Sunwest next alleges that two statements made directly about it are defamatory, including that Sunwest "doesn't mind doing business with" Banco Azteca and that "Banco Azteca sent $26.2 million in cash to Sunwest on four airplane flights."[87]

As an initial matter, Sunwest does not argue that the assertion that it does not mind doing business with Banco Azteca is false. Instead, Sunwest argues that this statement must be read in the context of the article, which paints Banco Azteca in a poor, allegedly false, light.[88] Defendants respond that (1) the alleged false statements are about Banco Azteca, not Sunwest, and therefore cannot hold a defamatory meaning, and (2) any alleged defamation would be defamation by implication, subject to higher requirements not met here.[89]

Neither of Defendants' threshold arguments hold water for these allegedly defamatory statements. Indeed, precedent makes clear that context is key to understand whether a statement is capable of sustaining a defamatory meaning: "A court simply cannot determine whether a statement is capable of sustaining a defamatory meaning by viewing individual words in isolation; rather, it must carefully examine the context in which the statement was made."[90] "As Justice Holmes explained, '[a] word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used.'"[91]

---

[87] Am. Compl. ¶ 114 d, e.
[88] Opp. 18.
[89] MTD 7–8, 13.
[90] *West*, 872 P.2d at 1009 (citations omitted).
[91] *Id.* (quoting *Towne v. Eisner*, 245 U.S. 418, 425 (1918)).

14

The article starts by making four clear statements about Banco Azteca, all of which Plaintiff claims are false: Stating that Banco Azteca has "its share of problems," has been "accused in past news stories of having links to the Mexican drug cartel," was "dropped as a financial partner by some U.S. banks because of 'risk and compliance concerns'" and is "now caught up in a Texas bribery scheme."[92] The Article then immediately states: "But Sunwest Bank, the Utah-based financial institution run by Republican U.S. Senate candidate Eric Hovde, doesn't mind doing business with it."[93] The "it" in the Article is intrinsically tied to the immediately preceding description of Banco Azteca. Defendants cannot foreclose any possibility of liability here simply because they used periods instead of commas. To parse out the individual sentences would fail to consider the full context of the statement. Instead, the court must consider whether it is defamatory to state that Sunwest does not mind doing business with Banco Azteca as allegedly falsely portrayed in the Article.

The Article's statement that Banco Azteca sent $26.2 million in cash to Sunwest should similarly be considered in the context of the article's description of Banco Azteca. Plus, that statement is also directly false, as the cash was allegedly sent to the Federal Reserve, not Sunwest.[94]

Defendants also argue that this is a claim for defamation by association, but Defendants' cited cases are significantly different than the case at bar. In *Emerito Estrada Rivera-Isuzu de P.R., Inc. v. Consumers Union of U.S., Inc.*, the plaintiff is never mentioned in the allegedly defamatory statement at all.[95] There, the plaintiff claimed that the defendant defamed a third-

---

[92] Art. 1.
[93] *Id.*
[94] Am. Compl. ¶ 130.
[95] *Emerito Estrada Rivera-Isuzu de P.R., Inc. v. Consumers Union of U.S., Inc.*, 233 F.3d 24, 26 (1st Cir. 2000).

party, the producer of a product plaintiff sold, and thus hurt plaintiff's sales of that product.[96] But even then, the court ultimately found "it advisable to decide this appeal on local law grounds" because they were "less certain" that it was a "prescribed constitutional rule . . . that defamation be 'of and concerning' the plaintiff."[97] Similarly, in *Kirch v. Liberty Media Corp*, the dismissed plaintiff was never mentioned in the allegedly defamatory statement, just a business partner, with the result that the plaintiff lost business.[98] By contrast, Sunwest is directly named in the alleged defamatory article multiple times. And, as explained above, the full context within the article of the alleged defamatory statements should be considered. This is not merely a defamation by association claim.

Thus, the remaining issue is whether the statements, in context, are capable of holding a defamatory meaning.[99] And ultimately, in the full context, the Article's statements that Sunwest is doing business with a troubled bank with possible links to a Mexican drug cartel is not defamatory because the Article makes it clear the statements are part of an ongoing political debate and accepts input from each side of that debate.

Here, similar to *Hogan* and *Mast*, the Article shows a clear ongoing controversy over the validity of the allegedly defamatory statements.[100] The Article's title is "Democrats Question Eric Hovde over His Bank's $26M Deal with a Troubled Mexican Bank."[101] The very first two

---

[96] *Id.*
[97] *Id.* at 26–28.
[98] *Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2nd Cir. 2006).
[99] *See West*, 872 P.2d at 288.
[100] *See Mast*, 971 P.2d at 932 (finding statements were not defamatory because the context let the reader know the statements were part of a political debate and thus would "necessarily be taken with a grain of salt."); *Hogan*, 762 F.3d at 1106–07 (finding statements were not defamatory because "the context makes clear that the reason for [plaintiff]'s termination is the subject of an ongoing, obviously nasty, employment dispute.").
[101] Art. 1.

words, "Democrats Question[,]" show that this is an article about an ongoing political controversy, signaling right at the outset that the article would "necessarily be taken with a grain of salt."[102] The first statement about Sunwest bank is also directly connected to the ongoing political controversy, describing the bank as "run by Republican U.S. Senate candidate Eric Hovde."[103] And immediately after the alleged defamatory statements, the article moves into clear political commentary from Mr. Wolk.[104] Further, just as in *Hogan*, the article provides both sides with an opportunity to share their side of the story.[105] Significant portions of the article are dedicated to Mr. Hovde's and Banco Azteca's response to the accusations.[106] Additionally, the article states multiple times that neither Sunwest nor Mr. Hovde has been accused of any wrongdoing or illegal actions.[107] Thus, the context makes clear that any claims or implications that Sunwest is doing something potentially unethical is only one side of an ongoing debate about a political candidate. A reasonable reader, reading the whole article, would recognize the initial statements in the article about Banco Azteca and Sunwest's relationship as exaggerated, politicized summaries touted by Mr. Hovde's political opponents.[108]

The Article's statement that Banco Azteca sent $26.2 million in cash to Sunwest is also not defamatory because the gist of the statement is true. While Sunwest alleges the cash was actually sent to the Federal Reserve, not to Sunwest, statements may be "infected with inaccuracy, inuendo, and outright falsity and still not be actionable so long as their 'gist' or

---

[102] *Mast*, 971 P.2d at 932.
[103] Art. 1.
[104] *Id.*
[105] Art. 2.
[106] *Id.* at 2–5.
[107] *Id.* at 1, 2, 5.
[108] *See West*, 872 P.2d at 1010 (finding no defamation where "most readers would view [the statements] as exaggerated commentary.").

'sting' rings true."[109] The Article reports on a repatriation transaction between Sunwest and Banco Azteca, including that the Federal Reserve was involved in the transaction—that it may not have been entirely accurate about the physical destination of the money does not make the Article defamatory.[110] Sunwest argues that if the story had printed "this truth, instead of the false one about cash shipments direct to Sunwest, its sting would have been blunted."[111] But the Article includes a quote indicating that the repatriation transaction was "overseen by regulators."[112] And Sunwest does not dispute that the "gist" of the statement—that Sunwest completed a repatriation transaction with Banco Azteca—is accurate. Therefore, this statement cannot be defamatory.

Ultimately, while the statements may cast Sunwest in an unpleasant, "nettlesome or embarrassing" light, the context makes clear the allegedly defamatory statements should not be taken at face value.[113] Instead, the statements are the subject of an ongoing political debate, with both sides given the chance to explain themselves. They are not capable of holding a defamatory meaning.

### d. Defamation by Implication

Sunwest also alleges defamatory implications from the Article. "In a defamation by implication action, it is the implication arising from the statement and the context in which it was

---

[109] *Jensen v. Sawyers*, 2005 UT 81, ¶ 89, 130 P.3d 325, 342.
[110] *Eagle Air Med Corp. v. Sentinel Air Med. All., LLC*, No. 2:16-CV-00176-TC-EJF, 2019 WL 4140918, at *7 (D. Utah 2019), *on reconsideration in part*, No. 2:16-CV-00176-TC-EJF, 2019 WL 6879252 (D. Utah 2019) ("to be true, a statement need not be completely accurate. 'Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified) (quoting *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991)); *Anderson v. Cramlet*, 789 F.2d 840, 845 (10th Cir. 1986) ("Defendants are not required to show that the allegedly defamatory statement is technically accurate, only that the 'gist' or 'sting' of the statement is true.").
[111] Opp. 13.
[112] Art. 5.
[113] *See Id.* at 1011.

made, not the statement itself, which forms the basis of [the] claim."[114] "[U]nder Utah law, the first step in analyzing a defamation-by-implication claim is to determine whether 'a reasonable fact finder' could 'conclude that the underlying statement conveys the allegedly defamatory implication.'"[115] "Only if a court first determines that a publication might be considered defamatory by a reasonable person is there a fact issue for the trier of fact."[116] Second, the court considers whether the implication is "capable of being objectively verified as true or false."[117] "Thus, to prevail in a defamation by implication action, the plaintiff must show that the gist of the defendant's statement, rather than its literal meaning, is 'false, defamatory, and not subject to any privilege.'"[118]

"A court simply cannot determine whether a statement is capable of sustaining a defamatory meaning by viewing individual words in isolation; rather, it must carefully examine the context in which the statement was made."[119] "In this evaluation of context, [courts] should examine (1) the words themselves and their implications; (2) the entire article or message; (3) the events or disputes that gave rise to the article; and (4) the likely effect on the reasonable reader."[120]

---

[114] *Hogan*, 762 F.3d at 1105 (quoting *West*, 872 P.2d at 1011).

[115] *Keisel*, 2023 UT App 163, ¶ 63 (quoting *West*, 872 P.2d at 1019).

[116] *Cox v. Hatch,* 761 P.2d 556, 561 (Utah 1988).

[117] *Id.* at ¶ 43 (quoting *West*, 872 P.2d at 1019).

[118] *Hogan*, 762 F.3d at 1105. Defendants argue that Sunwest must show that it intended to convey a defamatory implication to state a claim. *See* MTD 16. But, as discussed below, Sunwest has not alleged facts that show the Article is susceptible to a defamatory implication. Accordingly, the court need not decide whether a heightened intent standard applies. *See Hogan*, 2012 WL 4356326, at *9 (declining to consider heightened intent standard where article was not susceptible to a defamatory interpretation).

[119] *West*, 872 P.2d at 1009 (citations omitted).

[120] *Hogan*, 762 F.3d at 1106 (citing Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, *The Law of Torts* § 526 (2d ed. 2014)) (applying Utah law).

Sunwest offers three defamatory implications it claims a reader would draw from the Article in its complaint:

- "Sunwest is in a relationship with a bank with links, ties, or close relations with Mexican cartels."[121]

- "Sunwest is accepting the repatriation of U.S. dollars through the Federal Reserve in an inappropriate and illegal scheme."[122]

- "Sunwest is operating in a nefarious, illegal manner. Indeed, a reasonable person would conclude that the statements—that Banco Azteca is a 'bank linked to Mexican drug cartel' and 'Multiple U.S. banks have cut ties with Banco Azteca'—indicate that Sunwest is breaking the law by providing correspondent banking services to Banco Azteca."[123]

First, the implication that "Sunwest is in a relationship with a bank with links, ties, or close relations with Mexican cartels" simply repackages the defamation claims considered above. And as explained there, the links the article makes between Sunwest and Banco Azteca, fully considered in light of the ongoing political debate, are not capable of sustaining a defamatory meaning.

Second, the implications that "Sunwest is accepting the repatriation of U.S. dollars through the Federal Reserve in an inappropriate and illegal scheme" and that "Sunwest is breaking the law by providing correspondent banking services to Banco Azteca" are not reasonably conveyed by the text. The Article clearly states that Mr. Hovde and Sunwest have not been accused of wrongdoing and that there is no evidence the funds in questions were cartel related.[124] Further, the article says that Sunwest is "one of three banks that work, in collaboration with the Federal Reserve, with the Mexico City-based bank."[125] With three different U.S. banks

---

[121] Am. Compl. ¶ 114 j.
[122] *Id*. ¶ 114 h.
[123] *Id*. ¶ 114 k.
[124] Art. 1, 2, 5.
[125] Art. 2.

dealing with Banco Azteca, a reasonable reader would not make the additional inference that Sunwest's dealings with the bank are necessarily inappropriate or illegal. The Article's reference to the Federal Reserve's involvement further undermines Sunwest's proposed inference. The article also includes Mr. Hovde's response at length, discussing the legality of the transactions and the strength of Sunwest's compliance department.[126] Finally, the article also includes responses from Banco Azteca stating that the transactions were "legal" and "overseen by regulators."[127]

In summary, Sunwest stretches the Article to find inferences beyond that of a reasonable reader. The Article provides Mr. Hovde's response, including statements that Sunwest has a strong compliance program, and expressly states that Sunwest has not been accused of wrongdoing or illegality in multiple places. Reasonable readers would not find that the Article clearly implies Sunwest is engaged in any criminal activity. Accordingly, Sunwest has failed to state a claim for defamation by implication.

### e. Defamation Per Se

Sunwest also alleges that the Article "constitutes defamation per se because the article accuses Sunwest of involvement in or responsibility for money laundering, drug trafficking, kidnapping, and bribery, or at a minimum, of knowingly doing business with a Mexican bank that engages in such activity."[128] Defendants argue that the Article is not defamatory per se

---

[126] *Id.*
[127] Art. 5.
[128] Am. Compl. ¶ 181; Opp. 19.

because it does not state that Sunwest engaged in wrongdoing and any alleged implications about Sunwest cannot be defamatory per se.[129]

"[I]n order to constitute defamation per se, the challenged statements must 'be false and allege criminal conduct on the part of the plaintiff. . . or conduct which is incongruous with the exercise of a lawful business trade, profession, or office."[130] "Libel is classified per se if it contains 'defamatory words specifically directed at the person claiming injury, which words must, on their face, and without the aid of intrinsic proof, be unmistakably recognized as injurious."[131] "'[R]hetorical hyperbole' vaguely accusing a business of wrongdoing does not rise to the level of defamation per se."[132]

The Article does not directly accuse Sunwest of any wrongdoing, let alone any wrongdoing that could be defamatory per se. Indeed, as noted earlier, the article expressly states that that "[n]either Hovde or Sunwest have been accused of wrongdoing."[133] Sunwest's allegations of defamation per se rest on implications it gleans from the Article, not directly from statements that are in the Article. Accordingly, it is not facially defamatory and cannot be defamatory per se.

Sunwest argues that the implications it draws from the Article are defamatory per se because federal officials would be investigating Sunwest if the implications were true.[134] But Sunwest does not point out any facial accusation of wrongdoing in the Article, so any

---

[129] MTD 11; Reply 2.

[130] *Westmont*, 2014 UT App 291, ¶ 22 (quoting *Jacob v. Bezzant*, 2009 UT 37, ¶ 26, 212 P.3d 535, 545).

[131] *Seegmiller v. KSL, Inc.*, 626 P.2d 968, 977 n. 7 (Utah 1981) (quoting *Lininger v. Knight*, 123 Colo. 213, 221, 226 P.2d 809, 813 (1951)).

[132] *John Bean Techs. Corp. v. B GSE Grp., LLC*, 480 F. Supp. 3d 1274, 1323 (D. Utah 2020) (citing *Westmont*, 2014 UT App 291, ¶ 24).

[133] Art. 2.

[134] Opp. 18.

hypothetical investigation is irrelevant. Sunwest also argues that the Article taken as a whole is defamatory per se because it paints "a portrait of conduct that is deeply incongruous with the exercise of a lawful business, and is likely criminal."[135] Again, this stretches the Article beyond what the text can reasonably support. The Article reports on allegations made by Mr. Hovde's political opponents, gives Mr. Hovde ample space to respond, and does not claim that Sunwest has done anything wrong. As such, it is not defamatory per se.

In sum, Sunwest has not plausibly alleged that the article's statements are defamatory. Neither would the implications Sunwest asks the court to accept be drawn by a reasonable reader. And nothing in the Article is defamatory per se as to Sunwest. Accordingly, Sunwest's defamation claims are dismissed.

## II.     False Light

"A prima facie case for false light requires a plaintiff to demonstrate that (1) the defendant publicized a matter concerning the plaintiff that placed the plaintiff before the public in a false light; (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person; and (3) the defendant knew or recklessly disregarded the falsity of the publicized matter and the false light in which the plaintiff was placed."[136]

Sunwest alleges that the Article places it in a false light by including "statements and implications that would communicate to a reasonable reader that Sunwest does business with a cartel-linked Mexican bank."[137] Defendants' sole argument is that Sunwest cannot bring this

---

[135] Opp. 19.
[136] *Jacob*, 2009 UT 37, ¶ 21 (citing *Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 380 (Utah Ct. App. 1997).
[137] Compl. ¶ 161.

cause of action because it is a corporate entity.[138] Sunwest responds that Utah law does not forbid corporate entities from asserting false light claims.[139]

Defendants rely on a single case from this court which stated that Utah has adopted the Restatement approach for invasion of privacy torts.[140] From this, Defendants infer that Utah courts have adopted a comment from the Restatement that corporations have "no personal right of privacy" and cannot bring a false light claim.[141] But Defendants do not point to any decision from a Utah court holding that corporate entities cannot sue for invasion of privacy. In fact, the Utah Supreme Court has considered false light invasion of privacy claims brought by a corporate plaintiff without holding that corporate entities cannot bring these claims.[142] Accordingly, Defendants have not established that corporate entities cannot bring false light claims under Utah law, and their motion is denied on this cause of action.

## III.    Permanent Injunction

Sunwest's third cause of action is for "Permanent Injunction" based on the Article.[143] However, as Defendants point out and Sunwest acknowledges, an injunction is a remedy, not a cause of action.[144] A remedy is not the proper subject of a 12(b)(6) motion to dismiss but may be available were Sunwest to eventually prevail on a separate legal theory.[145]

---

[138] MTD 24.
[139] Opp. 33–34.
[140] MTD 24 (citing *Vasquez v. Trinity Mission Health*, No. 2:11-cv-01002, 2013 WL 4095157, at *19 (D. Utah 2013)).
[141] Restatement (Second) of Torts § 652I cmt. c (1977).
[142] *SIRQ, Inc. v. The Layton Companies, Inc.*, 2016 UT 30, ¶ 39, 379 P.3d 1237, 1245 (discussing false light claims brought by corporate entity without stating that corporations could not sue to enforce privacy rights).
[143] Am. Compl. 37.
[144] MTD 24; Opp. 32.
[145] *Ivanti, Inc. v. StayLinked Corp.*, No. 2:19-cv-00075, 2019 WL 4645325, at *4 (D. Utah 2019).

**ORDER**

Defendants' Motion to Dismiss Plaintiff's Amended Complaint[146] is GRANTED in PART and DENIED in PART. Sunwest's defamation, defamation by implication, and defamation per se claims are dismissed without prejudice. Sunwest's false light claim is not dismissed.

Signed September 22, 2025.

BY THE COURT

David Barlow
United States District Judge

---

[146] ECF No. 9.