---

**UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

---

| | |
|---|---|
| SUNWEST BANK, a Utah corporation,<br><br>    Plaintiff,<br><br>v.<br><br>GANNETT CO., INC., a Delaware corporation, and JOURNAL SENTINEL INC., a Wisconsin corporation;<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER DENYING [ECF NO. 66] PLAINTIFF'S MOTION TO RECONSIDER THE COURT'S SEPTEMBER 22, 2025 ORDER**<br><br>Case No. 2:24-cv-00876-DBB-JCB<br><br>District Judge David Barlow<br><br>Magistrate Judge Jared C. Bennett |

Before the court is Plaintiff Sunwest Bank's ("Sunwest") Motion to Reconsider the Court's September 22, 2025 Order,[1] Defendants' Gannett Co., Inc. and Sentinel Inc.'s response brief,[2] and Sunwest's reply.[3] Sunwest brought defamation, defamation by implication, and defamation per se claims against Defendants, but the court dismissed those claims.[4] Sunwest seeks reconsideration of that dismissal.

---

[1] Pl.'s Mot. to Reconsider the Court's September 22, 2025 Order ("Mot. to Reconsider"), ECF No. 66, filed January 21, 2026.
[2] Press Defs.' Opp'n to Pl.'s Mot. to Reconsider the Court's September 22, 2025 Order ("Defs.' Opp."), ECF No. 69, filed February 4, 2026.
[3] Pl.'s Reply in Supp. of Mot. to Reconsider the Court's September 22, 2025 Order ("Pl.'s Reply"), ECF No. 76, filed February 23, 2026.
[4] Mem. Decision and Order Granting in Part and Denying in Part Defs.' Mot. to Dismiss Am. Compl. ("Order on MTD"), ECF No. 45, filed September 22, 2025.

**BACKGROUND**

**Factual Background**

As the relevant facts are unchanged, the court restates the background from its earlier

order:

Sunwest Bank ("Sunwest") is a Utah-based commercial bank. Its CEO Eric Hovde ("Mr. Hovde") was the Republican candidate for United States Senate in Wisconsin during the 2024 election cycle. On September 19, 2024, the Milwaukee Journal Sentinel published an article titled "Democrats question Eric Hovde over his bank's $26M deal with a troubled Mexican bank" (the "Article"). The Article discusses the business dealings between Banco Azteca, a Mexican financial institution, and Sunwest to frame its reporting on Wisconsin Democrats' criticism of Mr. Hovde. It focuses on statements from Democratic Party spokesman Arik Wolk ("Mr. Wolk"), who criticized a repatriation transaction between Banco Azteca and Sunwest as part of a larger discussion of Mr. Hovde's qualifications for office.

Sunwest alleges that several statements made in the Article are false or imply a falsehood, beginning with statements about Banco Azteca (the "Banco Azteca Statements"):

- "Banco Azteca . . . has had its share of problems in recent years. Accused in past news stories of having links to the Mexican drug cartel."

- "Banco Azteca has been '[d]ropped as a financial partner by some U.S. banks because of 'risk and compliance concerns.'"

- "Banco Azteca is 'now caught up in a Texas bribery scheme with an American congressman.'"

- "[A]s recent as 2021, Banco Azteca had no correspondent banks in the U.S. with which it could transfer U.S. currency."

Sunwest next claims that two statements in the Article that refer to it directly are defamatory (the "Sunwest Statements"):

- Sunwest "doesn't mind doing business with [Banco Azteca]."

- "Banco Azteca sent $26.2 million in cash to Sunwest on four airplane flights."

Sunwest also claims that the statements made by Mr. Wolk were defamatory (the "Wolk Statements"):

2

- "Sunwest's transactions with Banco Azteca are 'extraordinarily concerning,' especially given the alleged past ties between Azteca and the drug cartel."

- "'Hovde is willing to do anything to enrich himself, even flying cash across the border for a bank suspected of working for criminal groups that are pouring deadly fentanyl into our state,' Wolk claimed."

Sunwest also alleges that the Article falsely implies that it has acted improperly, including alleged implications that:

- Sunwest is accepting the repatriation of U.S. dollars through the Federal Reserve in an inappropriate and illegal scheme.

- Sunwest is in a relationship with a bank with links, ties, or close relations with Mexican cartels.

- Sunwest is operating in a nefarious, illegal manner. Indeed, a reasonable person would conclude that the statements—that Banco Azteca is a 'bank linked to Mexican drug cartel' and 'Multiple U.S. banks have cut ties with Banco Azteca'—indicate that Sunwest is breaking the law by providing correspondent banking services to Banco Azteca.

Since its publication, Sunwest alleges that the Article has been viewed online by thousands of individuals. Sunwest has also allegedly been contacted by customers to "discuss their concerns about the accusations" in the Article. Sunwest alleges that the Article has harmed its reputation, its ability to attract and retain customers, and its potential to grow into new markets.[5]

**Procedural Background**

On May 29, 2025, Defendants filed their Motion to Dismiss, arguing that Sunwest failed to state a claim.[6] On September 22, 2025, the court entered an order granting in part Defendants' motion, dismissing Sunwest's defamation, defamation by implication, and defamation per se claims (the "opinion").[7] Plaintiff filed its Motion to Reconsider the Court's September 22, 2025

---

[5] Order on MTD 1–4 (citing Daniel Bice, *Democrats question Eric Hovde over his bank's $26M deal with a troubled Mexican bank*, Milwaukee Journal Sentinel, Sep. 19, 2024, https://perma.cc/XP8V-NFA2, hereinafter "Art."; and citing Am. Compl., ECF No. 37, filed April 23, 2025.).

[6] Defs.' Mot. to Dismiss Pl.'s Am. Compl., ECF No. 38, filed May 29, 2025.

[7] Order on MTD.

Order on January 21, 2026, asserting that a new Utah Supreme Court decision should change the outcome.[8]

## STANDARD

The Federal Rules of Civil Procedure "do not recognize a motion to reconsider."[9] However, under Rule 54(b), any decision adjudicating fewer than all claims "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."[10] "[D]istrict courts generally remain free to reconsider their earlier interlocutory orders."[11]

Some courts have applied the *Servants of the Paraclete* factors as the standard for a motion for reconsideration: "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."[12] However, the Tenth Circuit has since "distinguished the *Servants of the Paraclete* principles, which apply to 'a motion for reconsideration after a final judgment,' from a district court's discretionary reconsideration of an interlocutory order."[13] Thus, the court has broad discretion in how it considers a motion for reconsideration of an interlocutory order. One district court in the Tenth Circuit has concluded:

---

[8] Mot. to Reconsider.
[9] *Ysais v. Richardson*, 603 F.3d 1175, 1178 n.2 (10th Cir. 2010).
[10] Fed. R. Civ. P. 54(b).
[11] *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007).
[12] *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).
[13] *Luo v. Wang*, 71 F.4th 1289, 1298–99 (10th Cir. 2023) (citing *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1252 (10th Cir. 2011) ("This court, however, has declined to apply the [*Servants of the Paraclete*] limitations to rulings revisited prior to entry of a final judgment, concluding that district courts generally remain free to reconsider their earlier interlocutory orders."); *Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, n.2 (10th Cir. 2008) ("The District Court's partial summary judgment ruling was not a final judgment. Thus, [Plaintiff's] motion for reconsideration is considered an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment. In such a case, the district court is not bound by the strict

4

In short, a district court can use whatever standard it wants to review a motion to reconsider an interlocutory order. It can review the earlier ruling de novo and essentially reanalyze the earlier motion from scratch, it can review the ruling de novo but limit its review, it can require parties to establish one of the law-of-the-case grounds, or it can refuse to entertain motions to reconsider altogether.[14]

Here, Plaintiff's motion for reconsideration is based on a new decision from the Utah Supreme Court. The court exercises its discretion to consider whether that new decision justifies any changes to its previous order. The court will not consider any rehashed arguments addressed in the previous order, nor any new arguments that could have been raised in the previous briefing but were not.[15]

## DISCUSSION

Plaintiff argues that: (1) the Utah Supreme Court's new decision in *Mathews v. McCown* "re-casts the law of defamation in Utah" and this court's "logic in dismissing Sunwest's defamation claim is not in harmony with the approach prescribed by the Supreme Court in *McCown*";[16] and (2) the court overlooked that Sunwest was not itself a political actor. The court considers each of Plaintiff's arguments in turn.

### I.    *Mathews v. McCown*

The Utah Supreme Court released its opinion in *McCown* on August 14, 2025,[17] after briefing was complete on the pending motion to dismiss and just a few weeks before this court

---

standards for altering or amending a judgment encompassed in Federal Rules of Civil Procedure 59(e) and 60(b).") (internal quotations omitted); *see also Integrated Bus. Plan. Assocs., Inc. v. Operational Results, Inc.*, No. 2:22-CV-00733-JNP-CMR, 2025 WL 3470380, at *2 (D. Utah Dec. 3, 2025); *Ralston v. Cannon*, No. 19-1146, 2021 WL 3478634 (10th Cir. Aug. 9, 2021); *Anderson Living Tr. v. WPX Energy Prod., LLC*, 308 F.R.D. 410, 430–435 (D.N.M. 2015).

[14] *Anderson Living Tr.*, 308 F.R.D. at 433.

[15] *See Servants of Paraclete*, 204 F.3d at 1012 (motions to reconsider "are inappropriate vehicles to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion.").

[16] Mot. to Reconsider 1.

[17] *Mathews v. McCown*, 2025 UT 34, 575 P.3d 1114.

5

issued the opinion. Because the parties did not address it or bring it to the court's attention, the opinion did not discuss this new precedent.

Plaintiff argues that *McCown* is an intervening change in law. But Plaintiff overstates the effect of *McCown*. In *McGown*, the "district court did not detail what about the statements' content and context informed its conclusion. Instead, the court summarily 'incorporate[d] and adopt[ed] the reasoning made by the Defendants in their briefing and oral arguments."[18] As a result, the Utah Supreme Court found it necessary to examine in depth a variety of arguments and issues, and the relevant case law addressing them, including the public debate issue. Regarding public debate, *McCown* made plain that speech regarding a matter of public concern can be capable of defamatory meaning, but it did not alter Utah's overarching defamation law. Additionally, the facts here differ markedly from those in *McCown* in ways that *McCown* itself recognized as significant.

First, *McCown* did not alter the framework for defamation law in Utah, nor the law applied by this court in its order. *McCown* explained that "[o]n a motion to dismiss, the question for the district court is whether the pleaded statements are capable of defamatory meaning."[19] It then quoted *West* v. *Thomson Newspapers*, explaining that:

> In Utah, a statement is defamatory if "it impeaches an individual's honesty, integrity, virtue, or reputation and thereby exposes the individual to public hatred, contempt, or ridicule." A "publication is not defamatory simply because it is nettlesome or embarrassing to a plaintiff, or even because it makes a false statement about the plaintiff." . . . "A court simply cannot determine whether a statement is capable of sustaining a defamatory meaning by viewing individual words in isolation; rather, it must carefully examine the context in which the statement was made, giving the words their most common and accepted meaning."[20]

---

[18] *McCown*, 2025 UT 34, ¶ 42.
[19] *Id.* at ¶ 45.
[20] *Id.* ¶¶ 46–47 (quoting *West v. Thomson Newspapers*, 872 P.2d 999, 1008–09 (Utah 1994)) (internal citations omitted).

The opinion relied on these same principles, including many of the same quotes.[21]

*McCown* next considered three contexts—social media, public debate, and lawsuit allegations—in determining whether the statements were capable of a defamatory meaning.[22] Only the public-debate context is relevant here. But the Court's discussion on that point broke no new ground—the Court merely confirmed what the state trial court may have misunderstood, namely, that "[w]e have never held that speech related to a matter of public concern, made within the context of a public debate, can *never* be capable of defamatory meaning."[23] The Court then reviewed earlier Utah Supreme Court and Utah Court of Appeals decisions, explaining that although those cases considered the public-debate context as part of the analysis, they did not adopt a per se rule that statements made during heated political campaigns or public debates can never be defamatory.[24]

Here, the court's earlier opinion did not treat the political context as *per se* dispositive. The opinion never stated that the political context of the Article, in and of itself, was conclusive.[25] And, while the opinion found the political context an important part of the analysis, it did not rely solely on that context for dismissing the defamation claims: the court also considered in depth the source of each statement, whether the statement was an opinion or

---

[21] Order on MTD 6–7.

[22] *McCown*, 2025 UT 34, ¶ 58.

[23] *Id.* at ¶ 68.

[24] *Id.* at ¶¶ 66–78 (Discussing *Russell v. Thomson Newspapers, Inc.* 842 P.2d 896 (Utah 1992); *Pipkin v. Acumen*, 2020 UT App 111, 472 P.3d 315; *Jacob v. Bezzant*, 2009 UT 37, 212 P.3d 535; *Keisel v. Westbrook*, 2023 UT App 163, 542 P.3d 536; and *Nunes v. Rushton*, 299 F. Supp. 3d 1216 (D. Utah 2018)).

[25] Had a per se rule been applied, there would be no need for the lengthy discussion and analysis regarding the alleged defamation. *See* Order on MTD 1-23.

capable of being proven true or false, whether the statement was hyperbolic, whether input was accepted from each side, and whether cautionary language was included.[26]

Second, the facts here differ from those in *McCown* in ways that *McCown* recognized as important. *McCown* repeatedly relied on the fact that the statements at issue "lack[ed] rhetorical hyperbole, exaggeration, incredulous tones, cautionary language, or other signals that would lead a reasonable reader to not take the statements at face value."[27] But here, the Article, considered as a whole,[28] contained meaningful and repeated cautionary language—language relied upon extensively in the opinion.

When analyzing the Mr. Wolk statements, the opinion emphasized that the Article's very next sentence contained cautionary language.[29] Right after the challenged remarks, the Article quoted Mr. Wolk as stating that he was "not suggesting that Hovde or Sunwest had done anything illegal."[30] And, as the opinion explained, "[t]he article also offers Mr. Hovde's statements 'fighting back against the criticism' . . . ."[31] Thus, considering both the political context and the Article's cautionary language and presentation of both sides, the opinion concluded that the Article's use of Mr. Wolk's statements was not capable of a defamatory meaning in context.[32]

---

[26] Order on MTD 6-23.

[27] *McCown*, 2025 UT 34, ¶¶ 85, 101, 111, 113, 122.

[28] *See Hogan, v. Winder*, 762 F.3d 1096, 1106 (10th Cir. 2014) (explaining that "[i]n this evaluation of context, [courts] should examine . . . the *entire* article or message . . . .") (citing Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, *The Law of Torts* § 526 (2d ed. 2014)) (applying Utah law).

[29] Order on MTD 13.

[30] Art. 1; Order on MTD 13.

[31] Order on MTD 13 (quoting Art. 2).

[32] *Id.*

Similarly, the opinion's discussion of the Sunwest statements covered multiple relevant considerations. As the opinion stated: "the Article's statements that Sunwest is doing business with a troubled bank with possible links to a Mexican drug cartel is not defamatory because the Article makes it clear the statements are part of an ongoing political debate *and accepts input from each side of that debate.*"[33] The opinion explained that: "the article provides both sides with an opportunity to share their side of the story. Significant portions of the article are dedicated to Mr. Hovde's and Banco Azteca's response to the accusations. Additionally, the article states multiple times that neither Sunwest nor Mr. Hovde has been accused of any wrongdoing or illegal actions."[34] Thus, considering the totality of the statements and the context, the opinion concluded that the Sunwest statements were not capable of a defamatory meaning.[35]

After *McCown*, these same considerations still apply. In fact, even if *McCown* were interpreted as Plaintiff urges, that reading would merely diminish the persuasive force of the political context while increasing the weight of the cautionary language the opinion relied on. Ultimately, it leads to the same conclusion. The Article reported on an ongoing political debate, framed each party's statements as political accusations, contained cautionary language about the truth and extent of the accusations, and gave significant space to each side of the debate to share its view. In the full context of the Article, the statements are not capable of defamatory meaning.[36]

---

[33] Order on MTD 16.

[34] *Id.* at 17 (citing Art. 2–5).

[35] *Id.* at 18.

[36] Plaintiff also sought reconsideration of the opinion's decision on Plaintiff's defamation by implication claims. But the court, in holding that some of the implications were not capable of a defamatory meaning, explicitly relied on the court's earlier analysis. Order on MTD 20. Thus, for the same reasons as the other statements, the court also denies Plaintiff's request to reconsider the defamation by implication decision.

Sunwest also places considerable weight on the distinction between an editorial and a "hard news" piece. But the court does not believe this distinction carries any material weight on this record, which involves an online news source. The newspaper in *West* "had a clear demarcation between its news and editorial pages."[37] But in *McCown*, the Utah Supreme Court recognized that a categorical approach between news and editorials may not be as applicable in this digital era.[38] Indeed, modern online newspapers significantly blur that line, and this court cannot "write, with some confidence, things like, 'Newspaper readers expect that statements in editorials will be more exaggerated and polemicized than "hard news"' and that readers 'expect to see public officials criticized in editorial writing and are therefore less likely to rely on it in forming their opinions of the official.'"[39] And regardless, "even in that seemingly simplified media environment, [the Utah Supreme Court] eschewed bright line rules . . . ."[40] Here, the Article clearly frames its statements as reporting on political accusations by political actors.[41] Even if it is a "hard news" article, the political accusations at issue are more akin to an editorial. And in any case, the Article's substantial cautionary language and space given to both sides of the debate are important here.

## II.    Not a Participant in the Debate

Next, Sunwest argues that a reader would not perceive Sunwest as a participant in the political debate and so would not take the accusations against it with a grain of salt. But this

---

[37] *McCown*, 2025 UT 34, ¶ 63.
[38] *Id.*
[39] *Id.* (quoting *West*, 872 P.2d at 1000–01, 1009–10).
[40] *Id.*
[41] *See* Order on MTD 12, 16–17.

10

argument could have been raised in the previous briefing. As such, the court declines to consider it on this motion for reconsideration.[42]

## ORDER

Plaintiff's Motion for Reconsideration[43] is DENIED.

Signed May 5, 2026.

BY THE COURT

_____
David Barlow
United States District Judge

---

[42] *See Servants of Paraclete*, 204 F.3d at 1012 (motions to reconsider "are inappropriate vehicles to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion.").

[43] ECF No. 66.